**TOWN OF RICHMOND**

v.

**WAWALOAM RESERVATION, INC., et al.**

**Nos. 2003–69–Appeal, 2003–107–Appeal.**

Supreme Court of Rhode Island.

May 10, 2004.

Karen A. Ellsworth, Esq., for Plaintiff.

Elizabeth McDonough Noonan, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

FLANDERS, Justice.

The rural Town of Richmond (town) and a capacious campground for recreational vehicles furnish the factual backdrop for this dispute over alleged zoning and building-code violations. At all times material to these consolidated cases, the defendants, Wawaloam Reservation, Inc., James Smith, and Maureen Smith (hereinafter collectively referred to as defendants), owned and operated the Wawaloam Campground (campground or property) in the town. They appeal from Superior Court judgments granting injunctive relief to the town with respect to sundry zoning and building-code violations at the campground. For many years, the defendants and the town have squabbled over the defendants' alleged expansion and alteration of the campground, which exists as a

nonconforming use under the town's zoning ordinance. After the town obtained favorable decisions from the local zoning board of review and from the state building-code board concerning the existence of these violations—from which decisions the defendants failed to appeal or to seek available judicial review—it successfully sued the defendants in the Superior Court to enforce them. As a result, the court entered judgments requiring the defendants to comply with the applicable building-code and zoning-ordinance provisions and to abate the violations.

Appealing from the Superior Court judgment that enjoined them to correct the previously adjudicated violations of the zoning ordinance, defendants argue that the trial justice misapplied the law by finding that they needed to obtain special-use permits to build a new road, to add an addition to one of the campground buildings, and to proceed with other alterations of their legal nonconforming use of the campground. The defendants also appeal from the judgment requiring them to abate the previously adjudicated building-code violations at the campground. In doing so, they argue that the trial justice improperly found that defendants exercised sufficient control over the individual campsites in question to compel the removal of sheds, decks, and various other structures that lacked a building permit or that were otherwise at variance with the building code.

We reject these arguments. The doctrine of res judicata bars defendants from relitigating any claims and defenses relating to the existence of the violations in question that they raised or that they could have raised either in the previous administrative proceedings concerning these matters or in any appeal from or review of the adverse administrative decisions that those proceedings produced. With respect to the new road and to any other issues not governed by the previous administrative decisions, the trial justice, we conclude, did not err in finding that these alterations to the campground lacked the requisite permits and authorizations, and therefore were unlawful. Consequently, we affirm the Superior Court's issuance of injunctive relief in both cases.

**Facts and Travel**

Since 1969, defendants have owned this 100–acre–plus property and operated it as a recreational-vehicle campground. Located between Gardner Road and Hillsdale Road in the northeast corner of the town, the campground includes 300 individual campsites that campers using recreational vehicles lease from defendants on a seasonal and transient basis.

**1. Facts Pertinent to the Zoning Violations**

The campground was originally situated in an R–80 zoning district that permitted overnight and family camping. In 1990, however, the town rezoned the property to an R–2 district and amended its zoning ordinance to prohibit overnight and family camping in all town zoning districts. At that time, the campground became a legal nonconforming use. In 1991, the town again revised its zoning ordinance to allow camping in an R–2 district, but only by special exception. Under the current zoning ordinance, the property is located in an R–2 zone, where the town permits "Outdoor Private Land Recreation * * * Camps & Campgrounds" by special-use permit. Richmond Municipal Code, Title 18 Zoning § 18.16.010 at 146. The town issued a license to the campground for the 1991–1992 season on a month-to-month basis. The town issued defendants a license to operate a campground with a maximum of 300 campsites for the year ending May 31, 1993.

On April 2, 1991, the town granted defendants a building permit to construct a forty-foot by eighty-foot recreation building on the campground. The defendants used this building, known as the Pavilion, to serve food to campers who were staying on the property in their recreational vehicles. The defendants, however, did not seek or obtain a special-use permit before constructing this building. In 1994, defendants applied for a building permit to construct an addition to the Pavilion. The town denied this application. Nevertheless, between 1994 and 1995, defendants built a sixteen-foot by twenty-one-foot addition to the Pavilion to add restrooms, so that the building would comply with Department of Health regulations. In January 1996, the deputy zoning enforcement officer for the town issued a zoning-violation notice, ordering defendants to remove the addition to the Pavilion or to obtain a special-use permit for the alteration of a nonconforming development. The officer issued the citation under § 18.48.030(A) of the Town of Richmond's Zoning Ordinance, which provides that a "[n]onconforming use of a building, structure or land may be enlarged, expanded, or intensified with the grant of a special use permit by the zoning board of review."

The defendants appealed this violation notice to the Richmond Zoning Board of Review (zoning board). In August 1998, the zoning board denied this appeal. Although the zoning board gave defendants leave to apply for a special-use permit, defendants failed to submit such an application. Furthermore, defendants decided not to appeal the zoning board of review's decision to the Superior Court, as they were entitled to do under G.L.1956 § 45–24–69.

Thereafter, in April 1999, the town sued defendants in Superior Court (WC 99–180), seeking a permanent injunction that would require defendants to correct or abate the addition by obtaining appropriate relief from the board or by removing the addition from the Pavilion. The town argued that, as the zoning board previously had concluded, the addition constituted an illegal alteration of the defendants' nonconforming campground use.

In June 2001, the town's deputy zoning enforcement officer, Russell W. Brown, inspected the property. During this inspection, he observed that the addition to the Pavilion remained intact and that defendants had begun building a new road on a lot adjacent to the campground. Based on these observations, the town filed another action (WC 01–313) against defendants, seeking injunctive relief to prevent defendants from constructing and completing the road. The town argued that, like the addition to the Pavilion, the new road illegally altered and expanded the nonconforming campground use.

The Superior Court consolidated these actions. In 2002, the trial justice issued a bench decision, ruling that both the restroom addition to the Pavilion and the new road serving the campground illegally expanded defendants' nonconforming use. Because defendants did not obtain special-use permits before constructing these alterations, the trial justice granted the town's request for permanent injunctive relief and ordered defendants to obtain the permits or to remove the offending structures. This appeal ensued.

### 2. Facts Pertinent to the Building-Code Violations

In November 1995, the town's alternate building official, John Pagliaro, cited defendants for building-code violations involving various decks, sheds, and other such structures that campers built on their individual campsites. The town sent notice of these violations to defendants, but it

did not send any notice to the individual campers themselves. The defendants appealed this notice to the town's building code board of appeal, which upheld most of the violations. The defendants then appealed this decision to the Rhode Island Building Code Standards Committee, sitting as the Board of Standards and Appeals (state building-code board). In this appeal, the defendants also requested variances from the code sections cited. In 1996, the state building-code board upheld most of these violations and denied most of defendants' variance requests. Although defendants did not appeal this decision to the District Court, as they were entitled to do under G.L.1956 § 23–27.3–127.1.4(f), (g), they also failed to abate or to correct all the building-code violations at the campsites.

In 1997, the town, in its second amended complaint,[1] sought a permanent injunction that would require defendants to correct or abate the building-code violations and to terminate the unlawful use of the campsite structures in question. Some of the violations cited in the town's second amended complaint were not among those that the state-building-code board had considered in its 1996 decision. Before trial, in 2000, the town's new alternate building official, Russell Brown, once again inspected the campground and determined that most of the structures on the individual campsites—ones that the town had cited as violations in 1995 and that the state building-code board had found to be such in 1996—remained in violation in 2000. These violations included decks and sheds that individual campsite occupants had constructed without first submitting plans or obtaining building permits to do so. In addition, some of these structures failed to use pressure-treated wood, to have footings at least one foot below grade, or to comply with applicable load-bearing requirements.

By the time the Superior Court reached this case for trial in 2001, the parties had dismissed many of the allegations by stipulation. The trial focused on the building-code violations found in a pool-house building that defendants owned and on the various structures at individual campsites. The trial justice, in a written decision, found that the pool house violated § 809.2 (currently § 1010.2) of the Rhode Island State Building Code because the deck lacked the proper number of exits. In addition, he found that various structures at certain individual campsites violated the state building code. He decided that defendants were responsible for these violations because they exercised control over the individual sites, prescribing, *inter alia*, the requisite sizes for platforms and approving sheds and the materials for their construction. He concluded that defendants "have complete control of the area and are well positioned to have campers comply with the [b]uilding [c]ode."[2] Con-

1. The town initially filed a complaint against defendants in 1993, alleging failure to obtain a travel-trailer license and alleging the existence of a nuisance. The town then amended this complaint to include claims pertaining to site improvements and to the keeping of animals. The town dropped all these claims in the second amended complaint.

2. In reaching this conclusion, the trial justice relied on evidence showing that defendants were proactive in overseeing campsite alterations and the types of structures that campers wanted to build on their sites. He pointed to the following excerpt from defendants' Rules and Regulations:

> "Alterations, such as platform, sheds, etc., must be approved by the office before being erected. Platforms must be no wider [than] 8 feet and no longer than the length of your trailer. They must be built in 4X8 foot sections, bolted underneath, to provide easy maneuverability in the event one must be relocated. The platforms should be made from pressure treated or other approved

sequently, the trial justice ordered the defendants to ensure that the individual campsites complied with the building code by August 30, 2003. This appeal ensued. At a pretrial conference, we entered an order consolidating the zoning and building-code appeals.

## I

### The Superior Court Properly Admitted the Trial Testimony of Russell Brown, the Town's Deputy Zoning Enforcement Officer and Alternate Building Official

The defendants first contend that the Superior Court justice presiding over both cases erred in permitting Russell Brown (Brown), the town's Deputy Zoning Enforcement Officer and Alternate Building Official, to testify about defendants' zoning and building-code violations. The defendants insist that Brown was not qualified to testify because his appointment violated § 23–27.3–107.2 of the state building code, which permitted the local authority to appoint an alternate building official to act on behalf of the local building official "during any period of disability caused by, but not limited to, illness, absence, or conflict of interest."

In 2000, the town appointed Brown to serve as Deputy Zoning Enforcement Officer and Alternate Building Official. The defendants now allege that this appointment was improper under § 23–27.3–107.2 because the town's local building official was not under any disability at that time. Given this allegedly improper appointment, defendants maintain on appeal that the hearing justice erred in admitting Brown's testimony concerning defendants' zoning and building-code violations.

We rebuff this argument for several reasons. Initially, we conclude that defendants failed to properly raise the propriety of Brown's appointment at trial as an alleged reason to preclude him from testifying. It is axiomatic that we will not entertain on appeal an issue that the aggrieved party did not specifically raise before the trial court. *E.g., Harvey Realty v. Killingly Manor Condominium Association,* 787 A.2d 465, 467 (R.I.2001). "When an issue is not explicitly raised in the trial court with sufficient clarity so that the trial justice may appropriately respond to the claims of a party, we shall not consider the alleged error on appeal." *Scully v. Matarese,* 422 A.2d 740, 741 (R.I. 1980). In addition, the party must raise the issue "in reasonably clear and distinct form before the trial justice." *Town of Smithfield v. Fanning,* 602 A.2d 939, 942 (R.I.1992). Here, defendants assert that they raised the issue of Brown's appointment during their *voir dire* of this witness. They also maintain that they asked him during cross-examination whether the town's regular zoning enforcement officer was "ill or incapacitated in any way." But it does not appear from the record that they specifically objected on this ground when Brown took the stand to testify, nor did they argue that Brown's improper appointment precluded him from testifying at trial. At no time did they move to strike his testimony or to bar him from testifying because of the allegedly improper manner or method of his appointment to office.

wood and should remain close to the ground. PLEASE ask questions before beginning to build something that could end up costing a lot of money if done incorrectly. We can answer your questions. Don't hesitate! Also, don't forget that cement platforms are always an option. Seasonals are allowed one shed per site. The shed must be no larger than 8X10 feet."

Based on this evidence, the trial justice found that defendants exercised sufficient control over the individual campsites to cause the campers to comply with the building code. We concur and affirm this finding.

Merely by asking questions during the trial that were relevant to this issue while they were examining Brown, defendants, we hold, failed to afford the trial justice an opportunity to rule on whether the manner and method of Brown's appointment disqualified him from testifying at trial. Hence, they cannot raise this issue now for the first time on this appeal.

Moreover, had defendants properly raised this issue below, the town represents that it would have introduced evidence showing that the local building official was in fact under a disability when it appointed Brown to his office. In its brief, the town posits that it originally created the positions of Deputy Zoning Enforcement Officer and Alternate Building Official because the local building official had a conflict of interest with two of the defendants in this action.

Given defendants' failure to preserve this issue for appeal, we will not decide whether Brown's appointment violated the provisions of § 23–27.3–107.2. Avoiding such first-impression evidentiary disputes, which lack the vetting they should receive during a trial, is precisely one of the reasons why we will not permit parties to raise issues such as this for the first time on appeal. Because defendants did not object at trial to Brown's testimony or move to strike it because of his alleged unauthorized appointment, the town never had the opportunity to present evidence to counter this assertion. Therefore, we will not now entertain this argument for the first time on appeal.

In any event, even assuming, *arguendo,* that the town impermissibly appointed Brown to the position of Alternate Building Official, we would still decide that the Superior Court properly allowed Brown to testify. Under the Rhode Island Rules of Evidence, trial justices have broad discretion to admit the testimony of witnesses. *See* R.I. R. Evid. 601. Nothing in Brown's testimony suggested that he was incompetent to testify about his first-hand observations of defendants' property. And defendants do not cite any statute, rule, or other authority that would limit such testimony to duly appointed zoning and building officials. Therefore, for these reasons, we hold that the Superior Court did not commit reversible error when it admitted Brown's testimony in both the zoning and building enforcement cases.

## II

### Defendants' Zoning Violations

The defendants next argue that the hearing justice improperly issued a permanent injunction requiring defendants to comply with the town zoning ordinance. In doing so, the trial justice found that defendants impermissibly expanded their legal nonconforming campground use without obtaining special-use permits.

We will reverse a permanent injunction only if the hearing justice misapplied the law, misconceived or overlooked material evidence, or was clearly wrong. *Renaissance Development Corp. v. Universal Properties Group, Inc.,* 821 A.2d 233, 236 (R.I.2003). Injunctive relief can be an appropriate remedy for violations of zoning ordinances. *See City of Woonsocket v. Forte Brothers, Inc.,* 642 A.2d 1158, 1159 (R.I.1994) (per curiam).

We discern no error in the trial justice's grant of injunctive relief. In this case, defendants' campground became a legal nonconforming use on September 4, 1990, when the town amended its ordinance to outlaw overnight and family camping in the town. Municipal zoning ordinances apply to recreational vehicle campgrounds. *See* G.L.1956 § 32–7–3(3), (5)(iv); § 32–7–5(a), (c), (d). The Zoning Enabling Act

defines nonconformance as: "A building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment." Section 45–24–31(49). Section 18.48.030(A) of the town zoning ordinance further provides, in pertinent part, that a "[n]onconforming use of a building, structure or land may be enlarged, expanded, or intensified with the grant of a special use permit by the zoning board of review." *See also* § 45–24–40(a)(i) (vesting municipalities with authority to require a special-use permit for enlargement of nonconforming use).

Here, it is undisputed that defendants altered the campground without first obtaining a special-use permit from the zoning board of review. Moreover, for the additional reasons stated below, we hold that the hearing justice properly determined that defendants illegally altered and expanded their nonconforming use and that he properly issued injunctive relief to remedy this illegal alteration of the campground.

**1. The Doctrine of Res Judicata Barred Defendants from Relitigating Issues or Reasserting Defenses Previously Decided by the Zoning Board of Review**

On appeal, defendants argue that the hearing justice erred in finding that both the Pavilion addition and the road were enlargements of defendants' nonconforming use. But before addressing the merits of these contentions, we hold that res judicata precludes defendants from relitigating the propriety of the Pavilion addition. When defendants failed to appeal to the Superior Court from the decision of the zoning board of review (finding that the Pavilion addition violated the zoning ordinance), that decision became final for the purpose of foreclosing relitigation of claims and defenses that were raised or that could have been raised in that proceeding.

Because we can affirm a judgment for reasons other than those relied upon by the trial court, we invoke the doctrine of res judicata in this case to preclude repetitive litigation of claims and defenses previously decided in a final adjudicative proceeding. *See Merrilees v. Treasurer, State of Vermont,* 159 Vt. 623, 618 A.2d 1314, 1315 (1992) ("Allowing an appellate court to raise res judicata is consistent with policies of avoiding unnecessary judicial waste * * * and fostering reliance on judicial decisions by precluding relitigation * * *.").

"The policy underlying res judicata is to economize the court system's time and lessen its financial burden. 'This doctrine ensures that judicial resources are not wasted on multiple and possibly inconsistent resolutions of the same lawsuit.'" *ElGabri v. Lekas,* 681 A.2d 271, 275 (R.I.1996). "[R]es judicata operates as an absolute bar to a cause of action [when] there exists '(1) identity of parties, (2) identity of issues and (3) finality of judgment.'" *Rhode Island Student Loan Authority v. NELS, Inc.,* 600 A.2d 717, 720 (R.I.1991). When invoked, res judicata, also known as claim or defense preclusion, renders a previous judgment conclusive with respect to any claims or defenses that a party raised or could have raised in the previous proceeding. *See id.* Furthermore, a plaintiff bringing successive actions against the same defendant can invoke res judicata to preclude the defendant from asserting defenses that were raised or that could have been raised in the first proceeding. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure:* Civil 2d § 4414 at 344–51 (2002).

Here, the zoning board of review found that defendants' addition to the Pavilion building impermissibly expanded defendants' nonconforming campground use. When the defendants failed to appeal that decision to the Superior Court, it became final. Res judicata, therefore, bars defendants from reasserting this defense on appeal from the Superior Court judgment that required defendants to remove the Pavilion addition or to seek a special-use permit. Both the town and defendants were parties to the previous administrative proceeding, and defendants actually defended the propriety of the Pavilion addition before the zoning board of review. In addition, the zoning board of review's decision was tantamount to a final judgment for defense-preclusion purposes because the defendants did not appeal it. *See Department of Corrections v. Tucker,* 657 A.2d 546, 550 (R.I.1995) ("Since the decision of the board was not appealed, it became a final decision and was binding on both [parties]."); *Town of Lincoln v. Cournoyer,* 118 R.I. 644, 649, 375 A.2d 410, 413 (1977) (holding that unappealed decree constituted a final judgment for res judicata purposes). Finally, because the identical issue—namely, the propriety of the Pavilion addition under applicable zoning laws—was addressed in both proceedings, res judicata bars defendants from reasserting defenses that they raised or that they could have raised before the zoning board of review. "[D]irect enforcement of a judgment cannot be resisted merely by raising defenses that might have been raised before the judgment was entered." 18 Wright, § 4414 at 344. *See also Campbell v. Superior Court in and for the County of Maricopa,* 18 Ariz.App. 287, 501 P.2d 463, 465–67 (1972) (holding that res judicata precluded delinquent taxpayer from relitigating validity of assessment in suit brought by state to enforce collection of tax following prior administrative decision upholding assessment).

In addition, we hold that, in circumstances such as these, res judicata may attach to decisions of zoning boards of review. Previously, this Court has given preclusive effect to administrative agency decisions, as long as the tribunal acted in a quasi-judicial capacity. *See, e.g., Tucker,* 657 A.2d at 549–50 (granting res judicata effect to decisions of Personnel Appeal Board citing Restatement (Second) *Judgments* ch. 6, § 83 at 266 (1982)).[3] An administrative tribunal acts in a quasi-judicial capacity when it affords the parties substantially the same rights as those available in a court of law, such as the opportunity to present evidence, to assert legal claims and defenses, and to appeal from an adverse decision. *See id.* at 549.

3. Just as we have applied the doctrine of administrative finality to the decisions of zoning boards of review, *see, e.g., RICO Corp. v. Town of Exeter,* 787 A.2d 1136, 1143 n. 7 (R.I.2001) (collecting cases), the final results of proceedings before such boards are also subject to the effect of other preclusive doctrines, such as res judicata. In 1964, this Court cautioned that applying res judicata to decisions of zoning boards of review might "deny[] a landowner once refused relief the right to a reconsideration of an application based upon intervening circumstances resulting in a deprivation of all beneficial use of his property." *Marks v. Zoning Board of Review of Providence,* 98 R.I. 405, 406, 203 A.2d 761, 763 (1964). Although we acknowledge this risk, we caution that a zoning decision should be given preclusive effect in later proceedings only if the issues in both proceedings were identical. See *Lavoie v. Victor Electric,* 732 A.2d 52, 54 (R.I.1999) (per curiam) (refusing to apply res judicata when petitioner asserted that injury underlying initial petition for review was different from injury underlying subsequent petition for review). If an intervening change in circumstances is so significant as to deprive a landowner of all beneficial use of his or her property, the issues in the proceedings will not be identical for res judicata purposes. But here, no such intervening changes have occurred.

Here, the zoning board allowed the parties to present evidence and testimony in support of their legal arguments. Moreover, although the defendants had an opportunity to appeal the zoning board of review's adverse decision to the Superior Court under § 45–24–69, the defendants failed to prosecute such an appeal. Because the proceeding before the zoning board of review involved an administrative agency acting in a quasi-judicial capacity, we hold that res judicata precludes defendants from relitigating issues or reasserting defenses that were or could have been argued before and decided by that board. The propriety of the Pavilion addition was one such issue. Hence, defendants are precluded from relitigating the merits of that zoning violation in this case.

### 2. The Defendants Impermissibly Enlarged Their Nonconforming Use by Constructing a Road

The defendants argue that their construction of a road to facilitate traffic flow in and around the campground did not amount to an enlargement of a nonconforming use. Instead, they suggest, the road was merely incidental to defendants' lawfully managing and maintaining their campground. Also, according to defendants, the hearing justice overlooked material evidence demonstrating that they had the right to expand their nonconforming use to 600 campsites without obtaining special-use permits. At trial, one of the defendants testified that in 1969—the year the town first issued a license to defendants to operate a campground—defendants filed a plan with the town showing a 600–site campground.[4] She further testified that the town approved this plan. Because this plan put the town on notice in 1969 of defendants' intent to create a 600–site campground, defendants argue, they may now increase the number of campsites to 600—and construct all the infrastructure needed to serve such a campground, including the road in question—without obtaining a special-use permit.

We reject this argument. Even if the hearing justice had overlooked material evidence—and we have no basis to conclude that he did—defendants' 1969 expansion plans were irrelevant to the issue of whether they needed to obtain a special-use permit to enlarge their nonconforming use. No competent evidence showed that the town approved the alleged plan to expand the campground to 600 campsites. To determine the extent of a nonconforming use, we only look to the uses actually existing at the time the property became nonconforming, not to any plans or intended uses for the property. 7 Patrick J. Rohan, *Zoning and Land Use Controls* § 41.03[3][c] at 41–92 (2002).

The defendants' campground became a legal nonconforming use in 1990. Generally, "the right to continue a nonconforming use does not * * * include the right to expand or intensify that use," *Town of West Greenwich v. A. Cardi Realty Associates,* 786 A.2d 354, 362 (R.I. 2001)—even if the owners had plans to do so. A use of property does not obtain the protection afforded by its status as a legal nonconforming use unless the use actually existed at the time the ordinance prohibiting it took effect. *See id.* at 361–62. We strictly construe the scope of nonconforming uses because we view them " 'as detrimental to a zoning scheme, and the overriding public policy of zoning * * * is aimed at their reasonable restriction and

4. The defendants did not introduce this plan into evidence because they did not retain a copy of it and the copy they filed with the town disappeared from the town records before 1998.

eventual elimination.' " *RICO Corp.,* 787 A.2d at 1144–45.

The defendants' legal nonconforming use, therefore, only protects those campground uses actually existing on their property in 1990.[5] Even assuming that defendants originally intended in good faith to increase the number of campsites to 600 and that they had filed plans with the town that so indicated, this intent has no bearing on whether defendants needed to obtain a special-use permit to actually construct and use such additional sites. *See Misner v. Presdorf,* 421 N.E.2d 684, 685–86 (Ind.Ct.App.1981) (limiting nonconforming use of campsite to those uses actually existing when town rezoned campsite property, not uses campsite owners intended). Moreover, defendants could not expand the number of campsites—and also construct the necessary infrastructure—even if they had produced evidence showing that the town council approved a 600–site campground in 1969. *See Llewellyn's Mobile Home Court, Inc. v. Springfield Township Zoning Hearing Board,* 86 Pa. Cmwlth. 567, 485 A.2d 883, 885 (1984) (determining scope of nonconforming use by the number of mobile homes existing, not the number shown on the plans). Therefore, even if the hearing justice overlooked material evidence of defendants' intent, he did not err because this intent was irrelevant to the scope of defendants' nonconforming use.

Citing a Superior Court decision,[6] defendants next assert that they did not need a special-use permit to construct a road because this alteration of the campground was merely "the result of natural business growth." But we have never recognized a general "natural business growth" exception to the requirement of obtaining a special-use permit for a proposed expansion of a nonconforming use. In *A. Cardi Realty Associates,* 786 A.2d at 362, we held that, under the doctrine of diminishing assets, a court considering the expansion of a nonconforming use must look to the intent of the landowner, not the extent of excavation, at the time the zoning ordinance prohibiting the use took effect. In this case, however, defendants' nonconforming use and their proposed expansion involved campsites, not excavating natural resources. Accordingly, our reasoning in *A. Cardi Realty Associates* is totally inapposite. Moreover, there is no general "natural business growth" exception to the rule that nonconforming uses are to be strictly limited to those existing when the uses become nonconforming.

Equally unpersuasive is defendants' attempt to distinguish between merely changing and expanding a nonconforming use. " 'A change of use eliminates the exemption of a nonconforming use from recently enacted zoning ordinances.' " *Harmel Corp. v. Zoning Board of Review of Tiverton,* 603 A.2d 303, 306 (R.I.1992); *see Santoro v. Zoning Board of Review of Warren,* 93 R.I. 68, 71–72, 171 A.2d 75, 77–78 (1961). The town, however, never has alleged that the defendants changed their nonconforming use and thereby eliminated its exemption as a nonconforming campground use. Instead, the town argues

5. In 1990, the town licensed defendants to operate 250 campsites. Under the town's ordinance, defendants needed to obtain a special-use permit to increase the number of campsites. But in 1992 the town erroneously issued a license for 300 sites. The town concedes that this was an error, but it has not taken any steps to reduce the number of sites below 300. Therefore, we deem 300 campsites to be the number of campsites that are permitted at the campground by their status as a legal nonconforming use.

6. *Town of West Greenwich v. A. Cardi Realty Associates,* No. KC 90–776, 1999 WL 615741 (R.I.Super.Ct. Aug. 6, 1999).

only that defendants needed to obtain a special-use permit before altering or enlarging their legal nonconforming use. We agree.

For these reasons, we hold that the trial justice properly issued an injunction in the zoning-enforcement case requiring defendants either to obtain special-use permits to enlarge their nonconforming campground use or to remove the new road and the Pavilion addition to the campground.

## III

### Building–Code Violations

The defendants also challenge the injunction ordering them to abate various building-code violations at the campground. The defendants contend that they do not control the individual campsites in a manner sufficient to effectuate the terms of the injunction and that the trial justice erred in relying on vague and ambiguous portions of the state building code.[7] Once again, however, we have no need to reach the merits of defendants' arguments because res judicata bars their attempted relitigation here.

As discussed above, we may raise the doctrine res judicata *sua sponte* to affirm a trial court's judgment. *See Merrilees,* 618 A.2d at 1315. In this case, we hold that res judicata precludes defendants from relitigating defenses that were raised or that could have been raised in the previous code-violation proceeding before the state building-code board. Here, the identity of the parties was the same in both proceedings. Also, the state building-code board's decision upholding the alleged building-code violations became the equivalent of a final judgment when defendants did not appeal it under § 23–27.3–127.1.4(f), (g). *See Tucker,* 657 A.2d at 550.

We also hold that because the issues in both proceedings were identical, res judicata bars defendants from reasserting defenses that they raised or that they could have raised before the state building-code board. Even though the second amended complaint listed some additional violations at individual campsites that were not at issue in the first proceeding, both proceedings involved identical issues—namely, whether structures built by campers on individual campsites violated the building code. These additional violations arose from the seasonal and transient nature of defendants' business; that is, new campers occupied the campsites and built new structures of the same type that the state building-code board had ruled were illegal in the previous proceeding. Despite these new offending structures, defendants had the opportunity to argue that these kinds of structures on individual campsites and erected by campers did not violate the building code. Therefore, defendants are foreclosed from reasserting that defense in this proceeding.

For the foregoing reasons, we hold that res judicata bars the defendants from raising any argument or defense suggesting the defendants' lack of responsibility for removing these structures from individual campsites. The parties already litigated this issue before the state building-code board during the previous proceeding. Although the record before us does not show whether, in the previous proceeding, the defendants' actually argued all the building-code issues and defenses asserted in their brief, such as the alleged vagueness and ambiguity of the state building code,

7. The defendants do not challenge the trial justice's finding that the pool house violated § 809.2 (currently § 1010.2) of the Rhode Island State Building Code because it lacked the requisite number of exits.

res judicata bars the relitigation of defenses that were raised or that could have been raised in that previous proceeding. Accordingly, we hold that the defendants cannot reassert these defenses on this appeal because they could have and should have been raised in the proceedings before the state building-code board or in a timely appeal from the board's decision that upheld the violations.

## Conclusion

Filing a notice of appeal or seeking discretionary review from the appropriate court is the proper way to obtain relief from an adverse decision before an administrative agency, board, or body. Here, the defendants neglected to appeal or to seek judicial review of various adverse administrative decisions by the zoning board of review and by the state building-code board concerning the existence of zoning and building-code violations at the campground. By allowing these decisions to become final, the defendants subjected themselves to the doctrine of res judicata, barring them from relitigating those violations here. Moreover, with respect to the new road and to other attempts to alter or expand the campground, the trial justice did not err in finding that the defendants violated the applicable zoning and building-code provisions. Therefore, for the foregoing reasons, we affirm the Superior Court judgment granting injunctive relief in both cases in favor of the town.