DECISION
Before the Court is an appeal from a decision of the Zoning Board of Review of Little Compton ("Zoning Board") brought by Appellant John C. Burchard, Jr. ("Appellant"). The Zoning Board denied the Appellant's request for a building permit to reconstruct a fire-damaged three-family house (the "Barn"). Appellant seeks reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
The subject property (the "Property") is owned by Appellant and is located at 64 Meetinghouse Lane, Little Compton, Rhode Island in a single-family residential district. (Tr. at 4, 13.) The Property is depicted as Lot 27-3 on Plat 19 of the Little Compton Tax Assessor's records and is a legal nonconforming lot. (Tr. at 4, 41.) The Appellant's mother, Ellen Burchard ("Mrs. Burchard"), was the previous owner of the Property. In 1997, Appellant acquired ownership of the Property and Barn. (Appellant's Application to Zoning Board of Review.)
From 1958 until 1974, Mrs. Burchard utilized the Barn as a theater called the "Carriage *Page 2 
House Theater" ("the Company"). (Tr. at 12.) During the years of 1958 until 1974, the Barn also served as a residence for approximately fifteen to twenty actors and actresses performing at the Company. (Tr. at 17.) The Company entered into a contract with the actors and actresses living in the Barn that stipulated the rules and regulations associated with their residency. (Tr. at 21.) Although no monetary rent was required, housing in the Barn served as the actors' and actresses' job compensation. The residential portion of the Barn was comprised of sleeping quarters located on the second floor, one kitchen located on the first floor, and three bathrooms with one on the first floor and two on the second floor. (Tr. at 19.)
In 1974, the Company ceased operation, and Mrs. Burchard converted the Barn's living space into three apartments without obtaining a building permit, special permit, or variance. (Tr. at 27.) After renovations, the Barn contained a total of four bedrooms, three kitchens, and additional bathrooms. (Tr. at 42.) These apartments were rented continuously until November 18, 2005. Id,
On August 4, 1992, the then building official for the Town of Little Compton ("the Town"), George Flanagan ("Flanagan"), wrote a letter ("the Letter") to Mrs. Burchard after the property was inspected following the addition of a sun deck and new room. (Tr. at 37.) This letter informed Mrs. Burchard that during the inspection, Flanagan discovered that the Barn was being used as "three separate apartments with seven total bedrooms rather than one apartment with four bedrooms as listed in the tax assessor's records." (Letter attached to Zoning Board's Decision.) Further, the letter also stated that the use of the Barn as a three-unit apartment complex in a single-family residential zone necessitated a variance. Id, The Letter stated in pertinent part, "[t]o change the approved, four-bedroom, single-family, Carriage House to a three unit apartment complex with a total of seven bedrooms would have required a variance from the *Page 3 
Town." Id. The Letter went on to explain that because no variance was ever applied for or obtained, Mrs. Burchard was required to either discontinue her use of the Barn as apartments or obtain the necessary variance. Id. Mrs. Burchard failed to comply with the letter's requirements, and the Town of Little Compton never took enforcement action. Additionally, the Barn has always been listed as a single-family residence by the Tax Assessor's Office. (Tr. at 37-8.)
On November 18, 2005, a fire "badly damaged" the Barn and virtually "totaled" the structure's interior. (Tr. at 6.) Appellant subsequently applied for a Building Permit to repair the damage caused to the Barn by the 2005 fire. Upon reconstruction, Appellant planned to continue the Barn's prior use as a three-unit apartment complex. On March 26, 2007, the Little Compton Building Official, Michael Mello ("Mello"), denied Appellant's application for a Building Permit to "repair [the] fire damaged three-family house." Thus, on March 30, 2007, Appellant submitted an application to the Zoning Board for relief from Section 14-9.3(a) of the Zoning Ordinance. Appellant sought reversal of the Building Official's denial of Appellant's request for a Building Permit.
On May 16, 2007, the matter was heard at an advertised hearing ("the Hearing") before the Zoning Board. The Notice of Public Hearing (the "Notice") appeared in the Sakonnet Times on April 19, 2007 and stated:
 Notice of a Public Hearing is hereby given upon the petition of [Appellant], who is Appealing the decision of Little Compton Building Official, Michael Mello to deny him a Building Permit dated March 26, 2007 to "Repair fire damaged 3 family house" at 64 Meetinghouse Lane, Tax Assessors Plat 19, Lot 273. Hearing is set for 7:00 P.M. on May 16, 2007 at the Town Hall, 40 Commons, Little Compton, Rhode Island. Any person having a legal interest may appear and be heard, per order of the Little Compton Zoning Board of Review. See Notice; see also Tr. at 3-4. *Page 4 
Separate notice was sent by first class mail to all property owners within two hundred feet of the Property. (Tr. at 4.)
At the Hearing, Appellant testified that from the time the Company began in 1958 until the 2005 fire, the Barn was used as a multi-family dwelling. Appellant asserted that the Barn had served as a residence for multiple unrelated people since 1958, despite not being divided into three separate apartments until 1974. (Tr. at 19.) Appellant went on to testify that prior to 1974, the Company required Barn residents to sign leases, evidencing their status as lessees. (Tr. at 21.) Appellant's attorney stated that the use of the Barn as a three-unit apartment complex was, "a natural evolution of a legal nonconforming use that predated the enactment of zoning, which was May of 1968." (Tr. at 43.)
Myron Simmons, a general contractor in the Town of Little Compton for forty-three years, also testified at the Hearing. (Tr. at 5-10). Mr. Simmons explained that he worked on the Barn for Mrs. Burchard and her late husband, John Burchard, Senior in the spring of either 1967, 1968, or 1969. (Tr. at 8.) Mr. Simmons described the work he performed on the first and second floors of the Barn. (Tr. at 9.) Mr. Simmons also testified that while he remembered that actors lived upstairs at the time, he could not remember how many beds or cots were located on the second floor. Id. Additionally, Michael Mello, the Little Compton Building Official, also testified at the Hearing. (Tr. at 36). Mr. Mello passed around the Flanagan Letter stating that the Barn was "always listed as a single-family residence in the Tax Assessor's file." (Tr. at 37.) When questioned by Zoning Board member, Graeme Bell about this statement's authenticity, Appellant confirmed that he had recent knowledge of the Barn's single-family tax status. (Tr. at 38.) *Page 5 
Based on the testimony and evidence before it, the Zoning Board unanimously voted to deny Appellant's request for an appeal from the Building Official's denial of Appellant's request for a building permit. A written decision was filed on May 25, 2007. The instant appeal followed.
Before this Court, Appellant argues (1) that the decision of the Zoning Board is null and void because the public Notice of the Hearing was defective; (2) that the Zoning Board erred in relying on the 1992 Letter from the Town's Building Official due to the defenses of Laches and Estoppel; and (3) that the Barn's use never changed from a multi-person residential to single-family residential use, and therefore, a variance is not necessary.
 II Standard of Review
The standard by which the Superior Court reviews a zoning board's decision is codified in § 45-24-69(d):
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or *Page 6 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Questions of law are reviewed de novo by this Court. Narragansett WireCo. v. Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977). Such questions may be reviewed to determine what the law is and its applicability to the facts. Id. When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Board of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979.) The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. ofReview of North Kingstown, 818 A.2d 685, 690 (R.I. 2003) (quotingCaswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647
(R.I. 1981)). "[T]he Superior Court does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact."Munroe v. Town of East Greenwich, 733 A.2d 703, 705 (R.I. 1999). Rather, the Superior Court's review is "confined to a search of the record to ascertain whether the Board's decision rests upon `competent evidence' or is affected by an error of law." Id. (quoting Kirby v. Planning Boardof Review of Middletown, 634 A.2d 285, 290 (R.I. 1993)).
 III Discussion A Notice
Appellant argues that adequate and sufficient notice is a due process requirement in zoning matters and zoning board actions that ignore proper notice protocol are considered null. Appellant contends that the Notice given by the Zoning Board was invalid, and, thus, the Zoning Board's decision was a nullity. Conversely, the Zoning Board argues that Appellant failed to *Page 7 
show that the allegedly flawed notice prejudiced the Appellant or deprived the public of notice of the meeting.
Appellant asserts that the Zoning Board provided defective Notice of the Board's Hearing regarding Appellant's appeal of the denial of his request for a Building Permit. Appellant specifically asserts that the Notice violated § 45-24-53(a) and was fatally flawed because instead of providing notice to any member of the general public who wished to speak at the hearing, the notice improperly restricted potential speakers to those with a "legal interest" in the matter.
With respect to notice in zoning matters, there is a jurisdictional requirement for effective notice. Carroll v. Zoning Board ofReview, 104 R.I. 676, 678, 248 A.2d 321, 323 (1968). The purpose of notice is to allow interested parties to present facts at a hearing that may potentially clarify issues before the board. See Paquette v. ZoningBoard of Review of West Warwick, 118 R.I. 109, 111, 372 A.2d 973, 974
(1977). Historically, the Rhode Island zoning statute permitted a zoning board of review to hold a hearing on appeal by an aggrieved person so long as the board provided "public notice" of the hearing as well as "due notice to the parties in interest."[1] Our General Assembly rewrote the Zoning Act, which became effective December 31, 1994.See P.L. 1991, ch. 307, § 1 (amended 1993, 1994). The revised Act includes § 45-24-66, which replaced § 45-24-18. This new statute requires that public notice be published "at least fourteen (14) days prior to the date of the hearing in a newspaper of general circulation in the city or town. Section 45-24-66. Additionally, "[n]otice of the hearing . . . shall be sent by first class mail, postage prepaid, to the appellant and to those requiring notice under § 45-24-53." Id. *Page 8 
As referenced by § 45-24-66, § 45-24-53 provides a list of all parties entitled to separate, mailed notice with respect to zoning ordinance adoptions, repeals and amendments. Section 45-24-53(a) requires that notice of the hearing be given to the public "by publication of notice in a newspaper of general circulation. . . ." Section 45-24-53(a). The statute goes on to state that such publicized notice is intended to provide "all persons interested" with an opportunity "to be heard upon the matter of the proposed ordinance []" at such hearing. Section 45-24-53(a) (emphasis added). Thus, § 45-24-53 essentially echoes the former § 45-24-18 by requiring that separate notice be provided to all parties with an interest in a pending zoning matter so that those parties have an opportunity to appear and be heard at the public hearing. Section 45-24-53(a); see also, Carroll 104 R.I. at 678-79,248 A.2d at 323 (citing Radick v. Board of Review, 248 R.I. 392, 394,117 A.2d 84, 85 (1955)); Paquette, 118 R.I. at 111, 372 A.2d at 974;Perrier v. Board of Appeals of City of Pawtucket 86 R.I 138, 144,134 A.2d 141, 144 (1957).
Rhode Island has yet to define a "party in interest" in the context of notice sufficiency. Massachusetts defines the term "party in interest" as including "the petitioner, abutters, owners of land directly opposite on any public or private street or way, and abutters to the abutters, within three hundred feet of the property line of the petitioner as they appear on the most recent applicable tax list. . . ." Mass. Gen. Laws ch. 40A § 11 (2008); see also, Tuite v. Zoning Bd. of Review,95 R.I. 12, 13, 182 A.2d 311, 313 (1962) (holding that landowners within a prescribed area were not parties in interest entitled to mailed notice of hearing). While Massachusetts' definition is not binding on this Court, it nonetheless provides a useful starting point. Based on this definition, it can be inferred that "parties in interest" also possess a "legal interest" in a disputed parcel. *Page 9 
In the instant action, however, Appellant does not claim that any interested parties were deprived of either mailed notice or the opportunity to appear and be heard at the Hearing. Instead, Appellant asserts that the public notice published in the Sakonnet Times was insufficient because it did not invite the general public to be heard at the Hearing. The Notice specifically stated that "[n]otice of a Public Hearing is hereby given" and "any person having a legal interest may appear and be heard." (emphasis added). The Court acknowledges that § 45-24-53 entitles all interested parties to receive notice for the purpose of providing those parties with the opportunity to be heard at a hearing. The Zoning Board expressly sought compliance with § 45-25-53 by inviting all parties with a legal interest to appear and be heard. The Court also acknowledges, however, that neither statute nor case law mandates that the Zoning Board permit all members of the general public, including those without a legal interest in the Property, to also be heard at the Hearing. See section 45-24-66; see e.g., Carroll104 R.I. at 678-79, 248 A.2d at 323 (citing Radick v. Zoning Bd. of Review of theTown of East Providence, 248 R.I. 392, 394, 117 A.2d84, 85 (1955));Paguette, 118 R.I. at 111. 372 A.2d at 974; Perrier v. Board of Appealsof City of Pawtucket 86 R.I 138, 144, 134 A.2d 141, 144 (1957). Therefore, the Notice was not fatally defective because it served its simple statutory purpose of placing the public on notice of the Hearing; no further invitation to the general public to appear and be heard was necessary.
Further, assuming arguendo that the Notice did not sufficiently place the public on actual notice of the hearing, our Supreme Court has held that public notice is sufficient in a constructive form. Mello v. Boardof Review, 94 R.I. 43, 49, 177 A.2d 533, 536 (1962) (holding that statutory provisions requiring notice to the public are sufficiently complied with by the giving of constructive notice); see alsoTuite, 95 R.I. at 13, 182 A.2d at 313 (holding that newspaper publication was constructive notice of hearing and complied with statutory requirements for such *Page 10 
public notice). To be sufficient, "constructive notice must contain information that reveals the precise character of the relief sought by the application and the specific properties for which such relief is sought." Mello, 94 R.I. at 49, 177 A.2d at 536. Pendency of a zoning hearing that is published in a local newspaper and circulated through the city or town in question is constructive notice and constitutes sufficient compliance with the statutory requirements for public notice.Tuite, 95 R.I, at 14, 182 A.2d at 313.
In the instant matter, the Notice was published in the SakonnetTimes. The public was thereby placed on constructive notice of the Hearing at the very moment that the Notice was published and circulated throughout Little Compton. See Tuite, 95 R.I. at 14, 182 A.2d at 313. Further, the Notice expressly stated that Appellant was appealing Mello's denial of a building permit to rebuild the Barn located at 64 Meetinghouse Lane, Tax Assessor's Plat 19, Lot 279. Thus, the Notice revealed both the precise character of the relief sought by the application and the property for which the relief was sought. SeeMello, 94 R.I. at 49, 177 A.2d at 536. Therefore, the Notice was not fatally flawed because it placed the public on both actual and constructive notice of the Hearing; consequently, any subsequent action taken by the Zoning Board at the Hearing was neither void nor a nullity due to defective notice.
 B Affirmative Defenses of Laches and Estoppel
Appellant next contends that the equitable remedy of Laches precludes the Town from arguing that the owners cannot continue to use the property for a multi-person dwelling because fifteen years have passed since the Letter was received in 1992. Appellant also argues that the Zoning Board is estopped from relying on the Letter sent by Flanagan to Mrs. Burchard in 1992. Appellant emphasizes that the Town has taken no further action to enforce the Town's zoning laws since mailing the Letter. For these reasons, Appellant asserts that Laches may apply to the *Page 11 
instant matter for the purpose of abating a zoning ordinance violation.
Conversely, the Zoning Board argues that the defense of Laches does not apply to this case because the Town was unaware of the unlawful use of the Barn until the Building Official's final inspection of the premises in 1992. The Letter explicitly stated that Mrs. Burchard must either (1) discontinue use of two of the three apartments and remove the electric service, or (2) obtain a variance from the Zoning Board for the three apartments and file such a variance application within thirty days of receiving the Letter. Additionally, Mrs. Burchard failed to notify the Town of the Barn's unlawful use prior to 1992. Thus, the Zoning Board contends that the Appellant cannot demonstrate that the Town neglected its rights or that the Town induced Appellant to act, or not act, in reliance thereon.
Generally, the trial justice has the discretion to apply the Doctrine of Estoppel by Laches. O'Reilly v. Town of Glocester, 621 A.2d 697, 703
(R.I. 1993). "Laches is an equitable defense that involves not only delay but also a party's detrimental reliance on the status quo."Am. Condo. Ass'n v. IDC. Inc., 844 A.2d 117, 133 (R.I. 2004) (quotingAdam v. Adam, 624 A.2d 1093, 1096 (R.I. 1993)). Mere delay, however, is insufficient to prove Laches; the delay must also be unreasonable.Id. (citing Adam, 624 A.2d at 1096). The delay must cause a disadvantage to another and as long as parties are in the same condition, "it matters little whether one presses a right promptly or slowly, within limits allowed by law." Id. (quoting Chase v. Chase, 20 R.I. 202, 203-04,37 A. 804, 805 (1897)). Laches only applies if "a party, knowing his rights, takes no steps to enforce them until the other party's condition, in good faith, becomes so changed that he cannot be restored to his former state." Id. If the right is then enforced, "delay becomes inequitable and operates as an Estoppel against the assertion of the right."Id. *Page 12 
In the instant matter, Flanagan sent the Letter to Mrs. Burchard on August 4, 1992. This letter expressly informed Mrs. Burchard that the use of the Barn as a three-unit apartment complex in a single-family residential zone necessitated a variance. Appellant failed to provide further evidence proving that the Town somehow induced Mrs. Burchard and Appellant to continue the Barn's illegally nonconforming use. Moreover, Appellant has not evinced any disadvantage or detrimental reliance on the Board's delay in enforcing the Zoning Ordinance. Instead, Appellant has arguably profited from having a three-unit rental on his property instead of the permissible single-family dwelling. Therefore, Appellant may not rely on the equitable defense of Laches when arguing that the Barn may continue to be used as a multi-family dwelling.
Appellant further argues that the Town should be estopped from enforcing the Barn's single-family residential zoning designation because Mrs. Burchard and Appellant reasonably relied on the Town's alleged acquiescence to the Barn's multi-family use. Appellant maintains that Estoppel may be invoked against a governmental agency when appropriate circumstances, justice, and right, so require. Therefore, Appellant claims that the Town's inaction and silence serve as a sufficient basis to estop the Town from enforcing its applicable zoning regulations.
Our Supreme Court has applied the Doctrine of Equitable Estoppel against administrative and municipal authorities under circumstances where justice would so require. Greenwich Bay Yacht Basin Assoc.'s v.Brown, 537 A.2d 988, 991 (R.I. 1988) (citing Loiselle v. City of EastProvidence, 116 R.I. 585, 592, 359 A.2d 345, 349 (1976); Schiavulli v.School Committee of North Providence, 114 R.I. 443, 448-49,334 A.2d 416, 419 (1975); Ferrelli v. Department of Employment Security,106 R.I. 588, 592-93, 261 A.2d 906, 909 (1970)). Specifically, Equitable Estoppel may be applied to halt zoning enforcement by municipal officers in rare cases. *Page 13 Lombardi v. Kooloian, 560 A.2d 951, 952 (R.I. 1989) (citing Jones v.Rommell, 521 A.2d 543, 545-46 (R.I. 1987)). Our Supreme Court has emphasized, however, that the granting of equitable relief in a zoning context is extraordinary relief and will not be applied unless the equities clearly favor the party seeking that relief. Ocean RoadPartners v. State, 612 A.2d 1107, 1111 (R.I. 1992); see, e.g.Bertrand v. Zoning Bd. Of Review of Burrillville, 99 R.I. 329, 333,207 A.2d 604, 607 (1965) (stating that town might "well be estopped" from prosecuting complaint for removal of nonconforming garage where work on garage was commenced when no regulations were in effect, builder was forced to stop because of prolonged illness and heavy medical expenses, before completing garage, after adoption of zoning regulations, inquiry was made of two town officials who said building permit was still good, and garage was completed before any complaint raised); Town of Glocesterv. Olivo's Mobile Home Court, Inc., Ill R.I. 120, 131, 300 A.2d 465, 471
(1973) (holding that town should be estopped from claiming that nonconforming use as mobile home park was illegal, since for several years the town continued to accept owner's $100 license fee payment, town council continued to renew the license, and landowner had incurred severe financial liability as result of latest license's issuance);Town of Charlestown v. Beattie, 422 A.2d 1250, 1252 (R.I. 1980) (recognizing availability of Estoppel in some circumstances). To prove that equities clearly favor the party seeking relief, that party must offer evidence establishing the undertaking of substantial obligations in reliance on the municipality's conduct. Greenwich Bay,537 A.2d at 992 (citing Shalvey v. Zoning Board of Review of Warwick, 99 R.I. 692,210 A.2d 589 (1965)).
Further, when asserting the doctrine of Estoppel against a government agency acting in a public capacity, there must be proof that the government agency engaged in some positive act that induced the action of the adverse party. Ferrelli, 106 R.I. 588, 593, 261 A.2d 906, 909 *Page 14 
(1970). Conversely, "mere nonaction is insufficient to justify an application of the doctrine." Id. Thus, a municipality does not waive its right to demand compliance with a legal requirement by its prior failure to enforce the requirement. Town of Johnston v. Pezza,723 A.2d 278, 283-84 (R.I. 1999) (upholding town's revocation of building permit despite construction and operation of asphalt batch mixing plant);see also Almeida v. Zoning Bd. Of Review of the Town of Tiverton,606 A.2d 1318, 1321 (R.I. 1992) (holding that municipal officer will not be estopped from nullifying illegally issued building permit even though permitee acted pursuant to it).
Here, after inspecting the property in 1992, Flanagan expressly informed Mrs. Burchard that the Barn's multi-family use violated the Town's zoning ordinance and that Mrs. Burchard was required to obtain a zoning relief from the Town. Between 1992 and 2005, however, the Town admittedly took no action to enforce the requirements set forth in the Letter. Nonetheless, Appellant has offered no evidence to prove that either he or Mrs. Burchard undertook substantial obligations in reliance on the Town's failure to enforce its Zoning Ordinance. See GreenwichBay, 537 A.2d at 992. Therefore, Equitable Estoppel is not appropriate in the instant matter because the equities do not clearly favor the Appellant. Id.; see also Ocean Road Partners, 612 A.2datllll.
Moreover, the Town did not waive its right to demand compliance with the Zoning Ordinance by allowing the Barn's multi-family use to go unquestioned during those years. See Pezza, 723 A.2d at 283-84. Thus, without proof that the Town affirmatively acted to induce Mrs. Burchard or Appellant to continue the Barn's multi-family use, the Town's inaction is insufficient to warrant the imposition of Equitable Estoppel. See Ferrelli, 106 R.I. 588, 593, 261 A.2d 906, 909 (1970). Consequently, the Town may enforce its ordinances, despite the prolonged delay in enforcement. For the foregoing reasons, this Court finds that the Appellant *Page 15 
does not have a legal nonconforming use based on a zoning violation by reliance on Laches by the municipality.
 C Change in Use
Finally, Appellant argues that the Zoning Board erred when it concluded that the 1974 creation of three apartments in the Barn constituted a substantial change in use from a single-family residence to a multi-family dwelling. Instead, Appellant maintains that the Barn, which was seasonally utilized as housing quarters for actors and actresses employed by the Company during the years of 1958 until 1974, was a "multi-person dwelling from a time before zoning to the present." Appellant argues that the Zoning Board erroneously based its decision to uphold the denial of Appellant's application for a Building Permit on the fact that the Barn's residents shared a single, large kitchen during the years of 1958 until 1974. Conversely, the Zoning Board asserts that the testimony provided at the Hearing, as well as Flanagan's Letter, clearly demonstrates a substantial change in the Barn's use as a conforming single-family dwelling with four bedrooms to an illegal nonconforming three-unit apartment complex.
The Little Compton Zoning Ordinance defines a "nonconformance" as "a building, structure . . . or use thereof, which was lawfully established at the time of the adoption or amendment of this Zoning Chapter, and not in conformity with the provisions of such ordinance or amendment."See Little Compton Zoning Ordinance, Section 14-2.1(a). Our Supreme Court has also affirmed that for a land use or structure thereon to be protected as a nonconforming use, it must have existed at the time the use became nonconforming. Town of Scituate v. O'Rourke, 103 R.I. 499,504, 239 A.2d 176, 180 (1968); see also Town of Richmond v. WawaloamReservation, Inc., 850 A.2d 924, 934 (R.I. 2004); Crudeli v. Zoning Bd.of Review of City of Warwick, 73 R.I. 301, 303, 55 A.2d 284, 285 (1947). To determine the extent of a *Page 16 
nonconforming use, courts are required to "look to the uses actually existing at the time the property became nonconforming, not to any plans or intended uses for the property." Wawaloam Reservation,850 A.2d at 934-35 (R.I. 2004) (holding that even if defendants originally intended to increase number of campsites in nonconforming campground and they had filed plans with the town, this intent has no bearing on whether defendants needed to obtain a special use permit to actually construct and use such additional sites). Therefore, an owner's intended use is irrelevant when determining the presence of an existing use.Id.
The Zoning Board considered the Barn's seasonal use in conjunction with the general increase in the Town's population during the summer months. The Zoning Board determined that the existence of a large number of people temporarily living in the Barn, during the summer season — sharing one kitchen and three bathrooms — was insufficient to convince the Zoning Board that the Barn was a multi-family dwelling. Further, while "leases" existed between Mrs. Burchard and the various actor and actresses that seasonally resided in the Barn, no consideration was ever exchanged; instead, the actors and actresses received lodging in exchange for acting work.
The Zoning Board had before it evidence that the Barn was always listed as a single-family residence in the Tax Assessor's files. Specifically, Flanagan's Letter illustrated that the Barn was listed as one apartment with four bedrooms in the Tax Assessor's records. Appellant also admitted that the Barn was listed and assessed as a single-family residence in the Tax Assessor's file. After considering all evidence presented to it, the Zoning Board unanimously found that the Barn did not serve as a multi-family dwelling prior to its conversion into a three-unit apartment complex in 1974. This Court agrees that based on the evidence of record, the Barn was a single-family dwelling when the Little Compton Zoning Ordinance was adopted in 1968. *Page 17 
For purposes of discussion, however, if the Barn was a multi-family dwelling at the time the Little Compton Zoning Ordinance was enacted, then it would now be protected as a nonconforming use. Nonetheless, `"the right to continue a nonconforming use does not . . . include the right to expand or intensify that use' . . . even if the owners had plans to do so." Id. at 934 (quoting Town of West Greenwich v. A. CardiRealty Ass.'n, 786 A.2d 354, 362 (R.I. 2002)). The Little Compton Zoning Ordinance specifically states that, "a lawful nonconforming use shall not be changed to another nonconforming use. . . ." See Little Compton Zoning Ordinance, Section 14-2.4(g). "A change of use occurs, for zoning purposes, when a proposed use is `substantially different from a nonconforming use to which the premises were previously put'"Harmel Corp. v. Members of Zoning Bd. Of Review of Tiverton,603 A.2d 303, 305-306 (R.I. 1992) (quoting Souza v. Zoning Board of Review ofWarren, 104 R.I. 697, 699, 248 A.2d 325, 327 (1968)). The Little Compton Zoning Ordinance further provides, in pertinent part, that a nonconforming use of a building or structure may be expanded with the grant of a special use permit. See Little Compton Zoning Ordinance, Section 14-2.4(i).
Appellant argues that the Barn did not undergo a "change of use," but instead, naturally evolved from the housing quarters for the Company's actors and actresses during the summer months into a three-unit apartment complex. In the context of a business expansion, some courts recognize that an increase in the volume of trade or business conducted as a nonconforming use or other intensification of the use is generally permissible so long as the basic nature and character of the use is unchanged from that which existed at the time the use or structure became nonconforming. Chartiers Tp. v. William H. Martin. Inc.,518 Pa. 181, 188, 542 A.2d 985, 988 (1988) (holding that a nonconforming business use may expand as a matter of right so as not to stunt the business' natural development and growth); City of Philadelphia v.Angelone, *Page 18 280 A.2d 672, 683 (Pa.Commw.Ct. 1971) (holding that construction of enclosed tennis court on portion of nonconforming country club was natural expansion of country club activity); Connecticut Res. Recovery Auth. et.al., v. Planning and Zoning Com'n of the Town of Wallingford ConnecticutRes. Recovery Auth. et. al., v. Zoning Bd. of Appeals of the Town ofWallington et. al., 225 Conn. 731, 745-47, 626 A.2d 705, 712-13 (1993);McFillan v. Berkeley County Planning Com'n, 190 W. Va. 458, 464-65, 438 S.E.2d 801, 807-08 (1993). This right is referred to as the Pennsylvania doctrine of "natural expansion" and allows for the augmentation of a nonconforming business use to meet the demands of normal growth. Edward H. Ziegler, Jr., Rathkopf's The Law of Zoning and Planning, § 72:6 (2008) (citing Chartiers Tp., 518 Pa. 181, 542 A.2d 985 (1988) (summarizing the "natural expansion" doctrine).
Rhode Island, however, has never recognized the Pennsylvania doctrine of "natural expansion." Our Supreme Court refers to this doctrine as the "natural business growth" exception, and has expressly rejected it as an exception to the requirement of obtaining a special-use permit for a proposed expansion of a nonconforming business use. WawaloamReservation, 850 A.2d at 935 (rejecting defendants' argument that no special use permit was needed to construct a road because the alteration of the campground at issue was merely the result of natural business growth). Thus, in Rhode Island, a special permit must be obtained before a legal nonconforming business use may be expanded or intensified for any purpose.
In the instant matter, Appellant is essentially arguing that the "natural expansion" doctrine permitted Mrs. Burchard, as a matter of right, to expand the Barn's legal nonconforming use as a dwelling for multiple actors and actresses into a three-unit apartment complex. Even if the Barn's use as a multi-family dwelling constituted a "business" for purposes of the doctrine Appellant's argument must fail because Rhode Island does not recognize the "natural business *Page 19 
growth" exception. Thus, had the Zoning Board found that the Barn was a multi-family dwelling at the time that the Little Compton Zoning Ordinance was enacted, Mrs. Burchard was nonetheless required to obtain a special use permit from the Town before expanding and intensifying the Barn's multi-family use. The Zoning Board's conclusion that the Barn's use underwent a substantial change when it was converted into three apartments in 1974 was not clearly erroneous or in violation of ordinance provisions. This conversion necessitated zoning relief from the Town, and thus, the Barn was unlawfully used as an apartment complex from the time it was converted in 1974 until the 2005 fire.
Therefore, the record does not support a conclusion that the Board's decision was clearly erroneous, arbitrary or capricious, affected by other error of law, or in violation of ordinance provisions. Accordingly, the Court must sustain the Board's decision.
 IV Conclusion
After review of the entire record, this Court finds that the Zoning Board's decision was not clearly erroneous, an abuse of discretion, arbitrary or capricious, affected by error of law, or in violation of ordinance provisions. Substantial rights of the Appellant have not been prejudiced. Accordingly, the May 25, 2007 decision of the Zoning Board is hereby affirmed. Counsel for the Board shall submit the appropriate judgment for entry.
[1] Section 45-24-18 of the Zoning Act, entitled "Hearing of appeals to board," required "public notice [of the hearing of the appeal], as well as due notice to the parties in interest. . ." Section 45-23-17 of the Subdivision Act required "public notice [of the hearing of the appeal], as well as due notice to the parties in interest, including the applicant, abutting owners, and any other person who entered appearances before the plan commission . . ." Public Law 1991, ch. 301 § 1, which became effective December 31, 1994, repealed §§ 45-24-1 to 45-24-26 and replaced them with § 45-24-72. *Page 1