DECISION
Before this Court is the motion of Defendants Town of Exeter ("the Town") and the Exeter Planning Commission ("the Commission") for summary judgment against Plaintiff Phillip Salisbury ("Salisbury"). Defendants argue that the present action, in which Salisbury seeks a declaratory judgment that he is legally entitled to use a certain parcel of property for ingress and egress, is barred by collateral estoppel, res judicata, and administrative finality. Jurisdiction is pursuant to G.L. 1956 § 9-30-1.
 I Facts and Travel
This case has a truly tortuous (and, as counsel have suggested, torturous) procedural history which requires careful explication. Central to the case is certain real property owned by Salisbury, located at 159 Purgatory Road in Exeter, Rhode Island, and identified as Lots 6, 7, 8, 9, 11, and 28 on Assessor's Plat 37.[1] Lots 6, 7, 8, and 9 are "landlocked," meaning that they lack frontage on an approved town or state road. Lots 6, 7, 8, and 9 are also contiguous. Lot 11 is adjacent to Lot 9, and includes approximately 300 feet of frontage on Purgatory Road. Lot 28, which is the focus of this action, *Page 2 
connects Lot 8 to Locust Valley Road; its bounds are approximately forty feet by twenty feet.
On March 18, 1992, Salisbury filed an application for zoning certificates and a variance for Lots 6, 7, 8, and 9, seeking relief from the frontage requirement of the Ordinance in order to build a house on said lots (the "1992 Application"). On May 11, 1992, the Town of Exeter Zoning Board of Review (the "Board") held a hearing on Salisbury's application, but Salisbury failed to appear. On June 9, 1992, the Board issued a decision denying the 1992 Application due to Salisbury's failure to appear for the hearing. Salisbury did not appeal the Board's decision.
In November 1995, Salisbury again applied for zoning certificates for Lots 6, 7, 8, and 9 (the "1995 Application"). The Zoning Inspector (the "Inspector") denied the 1995 Application on the ground that each Lot lacked frontage and, therefore, required a dimensional variance. Salisbury did not appeal the Inspector's decision at that time.
On January 16, 1996, Salisbury brought a declaratory judgment action in this Court (the "1996 Action"). The complaint alleged that Salisbury was entitled to zoning certificates as a matter of right because Lots 6, 7, 8, and 9 are non-conforming lots of record which existed prior to the Town's enactment of the Ordinance in 1977.[2] Defendants responded to the complaint by moving to dismiss the action.
On March 18, 1996, following a hearing on Defendants' motion to dismiss, this Court remanded the matter to the Board to determine whether the Board had jurisdiction *Page 3 
over the Lots 6, 7, 8, and 9, [3] and to review the Inspector's denial of the zoning certificates. On October 3, 1996, following a series of hearings, the Board issued a decision providing that it did have jurisdiction over the lots and upholding the Inspector's decision. The Board so held on the ground that Lot 28 was an illegal lot and that Lots 6, 7, 8, and 9 had merged with Lot 11 by operation of law. The Board concluded that as a result of this merger, Salisbury's lots were no longer non-conforming lots exempt from the zoning ordinance, but instead comprised one conforming lot that was subject to the Board's jurisdiction.
Thereafter, Salisbury amended his complaint to add two claims: count two requested a writ of mandamus compelling the Zoning Inspector to issue the requested certificates, and count three appealed the Board's decision. On August 19, 1998, this Court issued a decision (the "1998 Decision") dismissing Salisbury's action in its entirety on the following grounds: first, that he was not entitled to a declaratory judgment because the claim was a de facto zoning appeal which would only have been appropriate if Salisbury had challenged the construction or operation of the Ordinance, which he did not; second, that he was not entitled to a writ of mandamus because the Inspector's action was discretionary and because Salisbury had an adequate remedy at law in the form of a direct appeal from the Board's decision; and third, that his application before the Inspector and subsequent appeal were barred by the doctrine of administrative finality. Finally, the Court noted that even if it had reached the merits of Salisbury's appeal, it would have denied him any relief. *Page 4 
In January 2002, Mark Allaire[4] ("Allaire") filed with the Planning Board a pre-application to subdivide Salisbury's merged Lots 6, 7, 8, 9, and 11 into a two-lot residential compound, with Salisbury signing on to the application as the property owner. In March 2002, Allaire filed an Application for Minor Subdivision Preliminary Plan Approval (the "2002 Application"), and again Salisbury signed on to the application as property owner. Following a hearing, Allaire filed a letter requesting permission to withdraw his application without prejudice. The Planning Board voted "to accept the letter" and to dismiss the applicationwith prejudice. Salisbury did not appeal the Planning Board's decision.
In 2003, Salisbury filed this action, seeking a declaratory judgment that he has good title to Lot 28 and that he is entitled to use Lot 28 as a right-of-way for access to Lot 8. On August 12, 2004, Defendants filed a motion for summary judgment asserting that Lot 28 was an illegal lot based on the undisputed facts and, therefore, that they were entitled to summary judgment. Following a hearing on September 20, 2004, this Court denied Defendants' motion for summary judgment. The Court noted that the effect of the transfer of Lot 28 had been simply to move the lot lines of Lot 8, and that the transfer therefore had not created an illegal subdivision.[5]
On March 15, 2006, Salisbury filed a motion for summary judgment, asserting that he was entitled to judgment as a matter of law because the undisputed facts revealed that the transfer of Lot 28 had resulted in the moving of lot lines rather than an illegal *Page 5 
subdivision. Following a hearing on June 19, 2006, this Court denied Salisbury's motion for summary judgment. Without particular elucidation, the motion justice suggested contrary to the Court's earlier ruling that the effect of transferring Lot 28 to Salisbury had been to create an illegal subdivision. The motion justice then acknowledged that this suggestion was inconsistent with the Court's prior holding and stated: "We'll sort this out. We'll make a record, then you can take it on appeal." (Tr. Jun. 19, 2006 at 18.)
On December 3, 2007, Defendants again moved for summary judgment, arguing now that the present action is barred by collateral estoppel, res judicata, and administrative finality. Salisbury has objected to Defendants' motion on the ground that the present action raises issues that have not been adjudicated in any prior proceeding.
 II Standard of Review
On a motion for summary judgment, the moving party has the initial burden of (1) bringing forth admissible evidence to suggest that there is no genuine issue of material fact, and (2) establishing that the moving party is entitled to judgment as a matter of law. SeeOlshansky v. Rehrig Intern., 872 A.2d 282, 286 (R.I. 2005). To survive a motion for summary judgment, the non-moving party need only bring forth admissible evidence to demonstrate that there is a genuine issue of fact material to the legal issues of the case. Id. The hearing justice must view the evidence in the light most favorable to the non-moving party, and may neither weigh the evidence nor otherwise attempt to resolve factual disputes. See Palmisciano v. Burrillville Racing Ass'n,603 A.2d 317, 320 (R.I. 1992).
This standard reflects the policy that summary judgment is "a drastic remedy" that "should be dealt with cautiously." Estate of Giuliano v.Giuliano, 949 A.2d 386, 390 *Page 6 
(R.I. 2008). Overall, the court should only grant a motion for summary judgment where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. SeeOlshansky, 872 A.2d at 286.
 III Analysis A. Administrative Finality
First, Defendants argue that Salisbury's action is barred by the doctrine of administrative finality as a matter of law, because Salisbury presently seeks relief that is substantially similar to relief he has sought in each of the prior administrative proceedings outlined above. Salisbury disputes Defendants' contention that administrative finality applies here.
"Under [the doctrine of administrative finality], when an administrative agency receives an application for relief and denies it, a subsequent application for the same relief may not be granted absent a showing of a change in material circumstances during the time between the two applications." Johnston Ambulatory Surgical Associates, Ltd. v.Nolan, 755 A.2d 799, 808 (R.I. 2000) (citing Audette v. Coletti,539 A.2d 520, 521-22 (R.I. 1988)). "This rule applies as long as the outcome sought in each application is substantially similar, . . . even if the two applications each rely on different legal theories." Id. (citingCosta v. Gagnon, 455 A.2d 310, 313 (R.I. 1983), May-Day Realty Corp. v.Board of Appeals of Pawtucket, 107 R.I. 235, 237, 267 A.2d 400, 401-02
(1970)). Conversely, if the outcome sought in each application is not substantially similar, or if there is a material change in circumstances between applications, the doctrine of administrative finality will not apply. See id. *Page 7 
The doctrine of administrative finality does not apply here because Salisbury seeks a declaratory judgment rather than review of any administrative determination. Defendants have pointed to no precedent, and the Court can find none, to support their argument that the doctrine of administrative finality may apply to bar a declaratory judgment claim. Instead, case law reveals that administrative finality applies only to proceedings which flow from an application to an administrative agency. See, e.g., Johnston Ambulatory Surgical Associates, Ltd. v.Nolan, 755 A.2d 799, 808 (R.I. 2000). Salisbury's claim flows neither from an application nor from any proceedings before an administrative agency and, therefore, falls entirely outside the doctrine of administrative finality. See id. In sum, because there is no "subsequent application for the same relief" at issue here, the action is not barred by administrative finality. See Nolan, 755 A.2d at 808.
The inapplicability of administrative finality to this case is also clear from the Court's earlier decision dismissing the 1996 action. In that decision, only the zoning appeal was dismissed pursuant to the doctrine of administrative finality. See Decision at 8. In contrast, the declaratory judgment claim was dismissed for failure to state a claim under § 9-30-2, because Salisbury did not challenge the construction or validity of the Ordinance but instead "plainly and simply t[ook] issue with the merits of the zoning inspector's decision. . . ."Decision at 6. Even though the Court found that the declaratory judgment claim was little more than a disguised zoning appeal, the Court did not purport to apply administrative finality to that claim. Here, even if Salisbury's claim is a disguised zoning appeal instead of a proper declaratory judgment claim, the doctrine of administrative finality likewise does not apply. Because the declaratory judgment *Page 8 
claim is not founded on any application before an administrative agency, Salisbury's action is not barred by administrative finality.
 B. Res Judicata
Defendants argue that Salisbury's present action is barred by res judicata as a matter of law, because multiple prior proceedings between Salisbury and the Town, including both administrative and adjudicatory proceedings, have resulted in final judgments on the issues which Salisbury presently raises. More specifically, Defendants argue: that the dismissal of the 1992 Application bars the present action because Salisbury requested the same relief in that application that he requests here; that the dismissal of Salisbury's appeal of the 1995 Application bars the present action because that application raised the same issues that are raised here; that the dismissal of the 1996 declaratory judgment claim bars the present action because that claim raised the same issues that are raised here; and, finally, that the dismissal of the 2002 Application for subdivision approval bars the present action because Salisbury requested the same relief in that application that he requests here. Salisbury disputes the applicability of res judicata to the present action, arguing that the issues raised in the present action have never before been squarely addressed by any adjudicatory body.
The Rhode Island Supreme Court has provided that res judicata "serves as an `absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action.'" ElGabri v. Lekas, 681 A.2d 271, 275 (R.I. 1996) (quoting Gaudreau v. Blasbalg, 618 A.2d 1272, 1275 (R.I. 1993)). Res judicata gives a preclusive effect to decisions of an administrative agency such as a zoning board, "as long as the tribunal acted in a quasi-judicial capacity." Town of *Page 9 Richmond v. Wawaloam Reservation, Inc., 850 A.2d 924, 933 (R.I. 2004) (citing Department of Corrections v. Tucker, 657 A.2d 546, 549-50 (R.I. 1995)). Moreover, "a zoning decision should be given preclusive effect in later proceedings only if the issues in both proceedings were identical." Town of Richmond v. Wawaloam Reservation, Inc.,850 A.2d 924, 933 n. 3 (R.I. 2004) (citing Lavoie v. Victor Electric, 732 A.2d 52,54 (R.I. 1999)); see also Marks v. Zoning Bd. of Review of City ofProvidence, 98 R.I. 405, 406, 203 A.2d 761, 763 (R.I. 1964) (noting that "[too strict a] principle of finality in administrative proceedings would deprive a zoning board of some of the flexibility of action with which it has been endowed by the legislature"). This rule is more forgiving than the general rule that "[r]es judicata bars the relitigation of any issue that could have been litigated in a prior proceeding. . . ." Taylor v. Wall, 821 A.2d 685, 688 (R.I. 2003) (emphasis added). Therefore, this Court will bar the present action under the doctrine of res judicata only if the issues in the present action actually were adjudicated in a prior zoning case or could have been adjudicated in a prior non-zoning case. See WawaloamReservation, 850 A.2d at 933 n. 3; Taylor, 821 A.2d at 688.
The dismissal of the 1992 Application does not bar the present action because the 1992 Application did not directly raise the issues of Salisbury's title to Lot 28 or his right to access Lot 8 via Lot 28. Indeed, the 1992 Application did not so much as mention Lot 28, but instead sought zoning certificates and a dimensional variance for Lots 6, 7, 8, and 9. The June 1992 decision of the Board dismissing the 1992 Application likewise failed to mention Lot 28; this decision was founded only on Salisbury's failure to appear at the hearing. Because "a zoning decision should be given preclusive effect in later proceedings only if the issues in both proceedings were identical," and because the issue *Page 10 
of Lot 28 was not raised in the proceedings on the 1992 Application, the Board's June 1992 decision does not preclude the present action.See Wawaloam Reservation, 850 A.2d at 933 n. 3.
This Court's 1998 Decision dismissing Salisbury's previous action stands as the final judgment on both Salisbury's claim asserting an appeal of the 1995 Application and his claim seeking a declaratory judgment in the 1996 Action. Because each claim was dismissed on a different issue, this Court will address each separately.
This Court's dismissal of Salisbury's appeal of the 1995 Application did not result in a final judgment on the issue of Salisbury's title to Lot 28 or his right to use Lot 28 for access to Lot 8. In the 1998 Decision, the Court dismissed the appeal on the ground of administrative finality, holding that the 1995 application raised substantially the same issue as the 1992 Application — namely, a request for zoning certificates. The 1992 Application, however, did not address Lot 28 at all; therefore, the Court's holding regarding administrative finality could not have addressed Lot 28. Indeed, that portion of the 1998 Decision analyzing administrative finality does not mention Lot 28. Because "a zoning decision should be given preclusive effect in later proceedings only if the issues in both proceedings were identical," and because the Court issued a final judgment only on the issue of administrative finality, that portion of the 1998 Decision dismissing the 1995 Application does not preclude this Court from addressing the merits of Salisbury's claim regarding Lot 28. See WawaloamReservation, 850 A.2d at 933 n. 3.
The 1998 Decision includes a hypothetical discussion of the merits of Salisbury's zoning appeal; Defendants argue that this discussion amounts to a final judgment on the issue of Salisbury's right to use Lot 28 for access to Lot 8. It is understandable that this *Page 11 
extraneous portion of the 1998 Decision could have proved confusing, but the following analysis will explain why the Court's earlier hypothetical discussion did not constitute a holding on the issue of Lot 28.
After setting forth administrative finality as the grounds for dismissing the zoning appeal, the Court explained how it would have ruled on the merits of the appeal. The Court began this discussion as follows: "Parenthetically, had this matter been properly before the Board and if Court [sic] addressed the merits of this controversy it would have reached the same conclusion of the Zoning Inspector and Zoning Board in denying the plaintiff's application for a zoning certificate."[6] Decision at 9. The Court was careful to couch every statement in this discussion in hypothetical terms, using the word "would" to introduce every verb. See Decision at 9-10. Indeed, the entire discussion is set in the subjunctive mood, which is "used for subjective, doubtful, hypothetical, or grammatically subordinate statements or questions. . . ." Random House Unabridged Dictionary
(1997), available athttp://dictionary.infoplease.com/subjunctive. Subjunctive constructions are indicative of non-binding dicta. See U.S. ex rel. Dunmore v.Camp, 698 F.Supp. 715 (N.D.Ill. 1988) ("subjunctive terms . . . [are] the classic hallmark of dictum rather than holding"); cf. Com. of Mass.v. U.S., 333 U.S. 611, 623, 68 S.Ct. 747, 754 (1948) (where "the judgment rest[s] as much upon the one determination as the other . . . the adjudication is effective for both"). Thus, the syntax of the 1998 decision betrays Defendants' position that the Court actually addressed the issue of Lot 28. Instead, the plain fact here is that the Court never passed on the substance of Salisbury's claim except in non-binding dicta. Accordingly, Salisbury's appeal of the 1995 Application did not *Page 12 
produce a final judgment on the issue of Lot 28 and, therefore, does not bar the present action under the doctrine of res judicata. SeeElGabri, 681 A.2d at 275.
This Court's dismissal of the 1996 declaratory judgment claim did not result in a final judgment on the issue of Salisbury's title to Lot 28 or his right to use Lot 28 for access to Lot 8. Salisbury's 1996 Action asserted a claim for a declaratory judgment that Salisbury was entitled to zoning certificates as a matter of right, on the ground that Salisbury owned pre-existing non-conforming lots which were exempt from the frontage requirement of the zoning ordinance. First, that claim did not involve Lot 28. Second, that claim was dismissed on the ground that Salisbury did not present a proper declaratory judgment claim.Decision at 5. The Court held that the claim was a disguised zoning appeal, and looked to case law which provides that the normal administrative procedures "may be overlooked" and a declaratory judgment claim may proceed where the construction or validity of an ordinance is at issue. Decision at 5 (citing Burns v. Sundlun, 617 A.2d 114, 116
(R.I. 1992); M.B.T. Const. Corp. v. Edwards, 528 A.2d 336, 338 (R.I. 1987)). Therefore, where Salisbury sought a declaratory judgment that he was entitled to zoning certificates — a straightforward zoning issue — but did not challenge the construction or validity of the Ordinance, his declaratory judgment claim was not proper. Id. Because the Court disposed of the claim on that issue, it never considered nor addressed the substantive merits of Salisbury's declaratory judgment claim.
Salisbury's present claim is distinct from the 1996 declaratory judgment claim in two ways. First, Salisbury now raises a claim which falls squarely under a different portion of § 9-30-2 because Salisbury is a "person interested under a deed" who seeks to *Page 13 
"have determined [a] question of [the deed's] construction or validity. . . ." See section 9-30-2. In contrast, Salisbury's previous declaratory judgment claim sought relief from the ordinance, and therefore would have been appropriate if Salisbury had sought to "have determined any question of construction or validity arising under the . . . ordinance" pursuant to § 9-30-2. Second, the present claim is focused on Salisbury's ownership rights in certain property, and does not seek any zoning relief whatsoever. Instead, Salisbury seeks only a declaration that his deed to Lot 28 is valid and that he is entitled to use Lot 28 for access to Lot 8. Because the issue here is not identical to any issue addressed in the 1996 Action, that action does not bar the present claim under the doctrine of res judicata.
Finally, the Board's dismissal of Allaire's 2002 Application for subdivision approval does not preclude the present action because the issues raised by the 2002 Application are not identical to those raised here.[7]
As a preliminary matter, the procedural posture of the 2002 Application is muddy given the Planning Board's response to Allaire's letter requesting permission to withdraw the application. Of particular difficulty is the Planning Board's decision "to accept the letter . . . with prejudice." Contrary to the Planning Board's decision, Allaire's letter requested permission to withdraw the application withoutprejudice. If the Planning Board meant by the term "accept" that it was adopting the letter or granting the relief requested therein, then its decision to "accept . . . with prejudice" (emphasis added) is paradoxical. If the Planning Board merely meant by the term "accept" that it was *Page 14 
recognizing the letter as an exhibit, then it never issued any substantive decision at all. Indeed, the Planning Board only voted (1) "to accept the letter" and (2) "to send a letter to Council," but never expressly voted to dismiss the application. Therefore, the Planning Board seems to have issued either a paradoxical decision or no decision at all. Accordingly, it is questionable whether the 2002 Application ever resulted in a final judgment on the merits.
However, this Court need not decide whether the Planning Board dismissed the 2002 Application with prejudice, because there is no identity of issues between that application and this declaratory judgment action. The 2002 Application sought only subdivision approval. The present claim seeks a declaratory judgment that Salisbury has valid title to Lot 28 and that he is entitled as a matter of right to use Lot 28 for access to Lot 8. These are not identical issues. Moreover, Salisbury argues correctly that the Planning Board did not have jurisdiction to pass on the question of the validity of Salisbury's deed and his consequent right to use Lot 28 for access to Lot 8.See Lett v. Caromile, 510 A.2d 958, 961 (R.I. 1986) (holding that a Planning Board may decide issues relating to subdivision, but not issues relating to ownership interests). Because "a zoning decision should be given preclusive effect in later proceedings only if the issues in both proceedings were identical," because the issues here are different from the issue raised by the 2002 Application, and because the Planning Board could not have ruled on the issues here, the 2002 decision does not preclude the present action. See Wawaloam Reservation, 850 A.2d at 933
n. 3.
In sum, none of the previous proceedings between Salisbury and the Town has squarely addressed the issue of whether Salisbury has valid title to Lot 28 and is entitled *Page 15 
to use Lot 28 for access to Lot 8.[8] Because there is no identity of issues between any prior proceedings and the present action, Salisbury's declaratory judgment claim is not barred by res judicata.
 C. Collateral Estoppel
Finally, Defendants argue that Salisbury's action is barred by collateral estoppel because multiple prior proceedings between Salisbury and the Town, including both administrative and adjudicatory proceedings, have resulted in final judgments on the issues which Salisbury presently raises. Salisbury disputes the applicability of res judicata to the present action, arguing that the issues raised in the present action have never before been squarely addressed by any adjudicatory body.
"Under the doctrine of collateral estoppel, an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings."Foster-Glocester Regional School Committee v. Board of Review,854 A.2d 1008, 1014 (R.I. 2004). Collateral estoppel, also called issue preclusion, hinges on identity of issues. See id.; see also Lee v. RhodeIsland Council 94, 796 A.2d 1080, 1084 (R.I. 2002). Therefore, this Court will bar the present action under the doctrine of collateral estoppel only if the issues in the present action are identical to those in previous proceedings. *Page 16 
Here, the above discussion demonstrates that the issue before the Court is entirely distinct from any that has been raised in any prior proceeding. Accordingly, the present action is not barred by collateral estoppel.
 IV The Merits of the Controversy
In the Court's extensive review of the travel of this case and the arguments which have been propounded by the parties on the two previous motions for summary judgment, several things have become clear. First, this case presents no factual dispute. The record reveals a relatively simple set of facts on which the parties agree: Salisbury has accepted and recorded deeds to Lots 6, 7, 8, 9, 11, and 28; it is only the legal status of these lots that is in dispute. Second, this case presents no dispute as to the applicable law. The parties' briefs and arguments reveal that the parties agree to an overall legal framework that controls their present dispute; it is only how to apply this legal framework to the facts at hand on which the parties disagree. Third, this case requires no more briefs or arguments. Each side has thoroughly presented its case as to both the procedural posture and the merits of Salisbury's claim. Therefore, this matter is ripe for a legal determination without the necessity of any further proceedings.
In addition to the summary judgment standard outlined above, "[t]he weight of authority . . . is that summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56." 10A Wright, Miller Kane, Federal Practiceand Procedure: Civil 3d § 2720 at 347 (citing Berberian v. O'Neil,111 R.I. 354, 356 n. 2, 302 A.2d 301, 302 n. 2 (1973)). Accordingly, the Rhode Island Supreme Court has provided that a "trial justice should grant summary judgment against the moving party only if it is clear that no issue of material fact exists *Page 17 
and that the nonmoving party is entitled to judgment as a matter of law." Thomas v. Ross, 477 A.2d 950, 953 (R.I. 1984). Here, there is no factual dispute, and all legal issues have been thoroughly briefed and argued. This Court may grant summary judgment in Salisbury's favor, therefore, if Salisbury is entitled to judgment as a matter of law.
Now the Court will turn to the arguments which the parties have set forth regarding both law of the case and the merits of the controversy.
Salisbury has argued that he is entitled to judgment under the law of the case doctrine because when this Court denied Defendants' first motion for summary judgment, this Court ruled as a matter of law that the transfer of Lot 28 was the moving of lot lines and not an illegal subdivision. Salisbury has also maintained that the transfer of Lot 28 constituted only the moving of lot lines and not an illegal subdivision according to the holding of the analogous case of Sako v. DelSesto,688 A.2d 1296 (1997). Finally, Salisbury has argued that even if the transfer was not the moving of lot lines, Lot 28 was a non-conforming lot that merged into Lot 8 pursuant to the merger provision of the Ordinance.
Defendants have argued that law of the case does not apply here (1) because the denial of summary judgment constituted only a finding that material issues of fact existed, (2) because a previous holding that the transfer of Lot 28 constituted the moving of lot lines would be clearly erroneous because such a holding would be barred by the 1998 Decision, and (3) because Defendants' present motion for summary judgment raises only the issues of res judicata, collateral estoppel, and administrative finality and does not, therefore, raise the same question that was addressed in the earlier motion for *Page 18 
summary judgment. Defendants have also argued with unyielding consistency that the transfer of Lot 28 was an illegal subdivision and not the moving of lot lines, because the transfer allegedly divided Lot 26 into two lots without subdivision approval.
After careful consideration of these arguments, this Court has determined that Salisbury is entitled to use Lot 28 for access to Lot 8 as a matter of law under the doctrine of law of the case and pursuant to the rule of Sako v. DelSesto. See 688 A.2d at 1297. Accordingly, this Court now grants summary judgment for Salisbury and against Defendants.
 A. Law of the Case
Salisbury is entitled to judgment as a matter of law under the law of the case doctrine because this Court has already ruled as a matter of law in its ruling on Defendants' first motion for summary judgment herein that the transfer of Lot 28 was the movement of lot lines and not an illegal subdivision.
Rhode Island has recognized the rule that the denial of a motion for summary judgment may control as law of the case, precluding further consideration of any issue that the Court has ruled on as a matter of law. See Goodman v. Turner, 512 A.2d 861, 864 (R.I. 1986). Although some treatises have suggested a contrary rule, see 10A Wright, Miller Kane,Federal Practice and Procedure: Civil 3d § 2712 at 214, 73 Am. Jur. 2dSummary Judgment § 62 at 701, this contrary rule is supported by the rationale that a denial of summary judgment is "simply . . . a decision that there is a material factual issue to be tried." 10A Wright, Miller Kane, Federal Practice and Procedure: Civil 3d § 2712 at 214. However, where a denial of summary judgment rests on legal rather than factual grounds, numerous jurisdictions have recognized the preclusive effect *Page 19 
of such a denial. See, e.g., Mann v. GTCR Golder Rauner, LLC,483 F.Supp.2d 864, 870-71 (D.Ariz. 2007); L-3 Communications Corp. v. OSISystems, Inc., 418 F.Supp.2d 380, 382-83 (S.D.N.Y. 2005); Monaco v.Hartz Mountain Corp., 840 A.2d 822, 830 (N.J. 2004). Accordingly, if either of the previous motions for summary judgment in this case were denied on legal rather than factual grounds, then this Court must cede to that decision as law of the case.
Here, the first motion for summary judgment, by which Defendants sought a judgment on the ground that the transfer of Lot 28 was an illegal subdivision as a matter of law, was denied on the following grounds:
 The ordinance could have given the Planning Board jurisdiction to approve all lot line changes; that didn't happen in Exeter from what I can see. Therefore, the Defendant's Motion for Summary Judgment is denied. It appears to be the moving of a lot line. (Tr. at 4.)
Contrary to Defendants' argument that this constituted a finding that issues of fact precluded summary judgment, when viewed as a whole this excerpt constitutes a legal holding. Because the word "therefore" is indicative of causation, the Court's statement could be rephrased accurately as follows: because Exeter had no jurisdiction over lot line changes, Defendant is not entitled to summary judgment. The Court, therefore, ruled on the legal issue of the Planning Board's lack of jurisdiction over lot line changes. This ruling would have been irrelevant if the Court had not also considered the transfer of Lot 28 to have been the moving of a lot line. Indeed, the Court immediately followed its ruling with the statement that "it appears to be the moving of a lot line." Id. Although this statement is couched in indecisive language, its context following an explicit legal ruling reveals that it was in fact an implicit application of the rule that the Planning Board *Page 20 
lacked jurisdiction over lot line changes — a legal holding that no subdivision had occurred. Moreover, the Court did not acknowledge that any issues of fact remained. In fact, the Court followed its holding by noting that Salisbury had not filed a cross-motion for summary judgment — implicitly recognizing that the Court would have granted such a motion. Thus, the Court did not rest its holding on any issues of fact, but on a principle of law which would have been irrelevant if the undisputed facts had revealed anything other than the moving of a lot line.
In contrast, the second motion for summary judgment, by which Plaintiff sought a judgment on the ground that the transfer of Lot 28 constituted only the moving of lot lines as a matter of law, was denied on the following grounds:
 [I]t seems to me that this was an illegal lot, it was illegally subdivided. We're in sort of a quagmire at this point, because I don't think you're entitled to summary judgment. But Judge Lanphear didn't think the Town was entitled to summary judgment either. I'm denying your motion for summary judgment. . . . We'll set it down for trial, assign it for trial. We'll sort this out. We'll make a record, then you can take it on appeal. (Tr. at 18.)
This holding is precisely the sort that falls under the general rule set forth in the treatises: a determination that the case should go to trial. Indeed, in ruling on this second motion for summary judgment, the Court implicitly acknowledged that the ruling on the first motion was binding; otherwise, there would have been no "quagmire." Because it did not include a legal holding, but instead acknowledged a legal knot which might have been untied at trial or on appeal, the Court's unclear ruling on the second motion has no preclusive effect as law of the case.
This Court, therefore, holds that the transfer of Lot 28 constituted only the moving of lot lines pursuant to the law of the case doctrine. The Court's denial of *Page 21 
Defendants' first motion for summary judgment constituted a legal holding and not a finding that material issues of fact existed. Defendants' other arguments have already been addressed earlier in this decision. The Court's denial of Defendants' first motion for summary judgment was not clearly erroneous because the 1998 Decision has no preclusive effect on this case, and this Court is not constrained to address only issues of res judicata, collateral estoppel, and administrative finality here because the parties have thoroughly briefed and argued the merits of the controversy. Accordingly, Defendants' arguments are unavailing, and Salisbury is entitled to judgment under the doctrine of law of the case.
 B. The Legal Status of "Lot 28"
This Court need not rest its decision solely on the grammatical wrangling involved in the above application of the law of the case doctrine, however. A review of the substance of Salisbury's and Defendants' arguments favors Salisbury's positions even more strongly.
Defendants have consistently maintained the position that the transfer of Lot 28 constituted an illegal subdivision. Defendants so argue on the ground that Lot 28 was severed from Lot 26 without Planning Board approval. As a result of this illegal subdivision, Defendants assert that Salisbury does not own Lot 28 and cannot use it for access to Lot 8.
Salisbury argues that the transfer of Lot 28 constituted only the moving of lot lines. Salisbury so argues in reliance on the case ofSako v. DelSesto, which holds that there is no subdivision where a portion of one lot is transferred to the owner of an adjacent lot.Sako v. DelSesto, 688 A.2d 1296, 1297 (1997). In the alternative, Salisbury *Page 22 
argues that Lot 28 merged with Lot 8. In either case, Salisbury asserts that he owns Lot 28 and is entitled to use that property for access to Lot 8.
The Sako case is central to the arguments of both parties, and, therefore, requires some discussion. In Sako, Gerald Lanni and his daughter Sally Ann Lanni applied to the Cranston Zoning Board for a variance in order to construct a single-family residence on a parcel of real estate owned solely by Mr. Lanni. 688 A.2d at 1297. This parcel included two lots, numbered 1654 and 1655 on assessor's plat No. 12/2, both of which lacked sufficient frontage on a public street.Id. In 1993, the Board granted the requested variance on the condition that Mr. Lanni and his wife Alice Lanni convey to Mr. Lanni individually a strip of land from an adjacent lot, numbered 1648, which Mr. and Mrs. Lanni owned jointly. Id. The strip of land would not have been allowable as an independent lot, but rather "was a pie-shaped parcel tapering from twenty feet of street frontage to three feet at the back end of the lots." Id.
The appellants in Sako argued that the conveyance of this excised strip of land constituted an illegal subdivision. See 688 A.2d at 1297. In addressing the appellants' argument, the Rhode Island Supreme Court held that the conveyance did not constitute a subdivision at all, because the strip of land had simply diminished the size of one lot, and augmented the size of two others. See id. Effectively, the transfer had done nothing more than to shift the lines of the three affected lots.See id. The Court's discussion follows:
 At the time of the granting of this variance, G.L. 1956 § 45-23-1(1)(a) defined a subdivision as "the division of a lot, tract, or parcel of land into two (2) or more lots, tracts, parcels, or other divisions of land for sale, lease, or other conveyance. . . ." In the instant case there is no question that this conveyance did not create two or more lots, tracts, or parcels of *Page 23 
land. Consequently we hold that this conveyance did not constitute a subdivision. Id. (ellipsis in original).
Therefore, Sako stands for the proposition that under Rhode Island law at the time the variance was granted — 1993 — the moving of lot lines did not constitute a subdivision.
Before moving on to apply the Sako holding to these facts, it is important to note that Sako applied a statute which was on the books at the time that Lot 28 was transferred, but which has since been repealed and replaced by a new statute. Then-section 45-23-1(1)(a) provided that "[t]he word `subdivision' shall mean the division of a lot, tract, or parcel of land into two (2) or more lots, tracts, parcels, or other divisions of land for sale, lease, or other conveyance, or for development, simultaneously or at separate times." This statute was controlling in 1985 and was still in effect in the early 1990s, but has since been replaced by § 45-23-32. Section 45-23-32(51) provides that "[a]ny adjustment to existing lot lines of a recorded lot by any means is considered a subdivision." Thus, it would appear that theSako holding does not apply to modern lot line changes, but does apply to lot line changes that occurred while § 45-23-1(1)(a) controlled the definition of the word subdivision — which includes the time that Salisbury took title to Lot 28.
In light of the above considerations, Salisbury is correct that the 1985 transfer of Lot 28 constituted only the moving of lot lines under the rule in Sako. See 688 A.2d at 1297. Here, Newbrook Investments, Ltd. ("Newbrook") transferred a portion of Lot 26 to Salisbury, the owner of adjacent Lot 8. Newbrook did so in order to benefit Lot 8 by allowing street access via Lot 28. Where such a transfer occurs, "there is no question that [the] conveyance [does] not create two or more lots, tracts, or parcels of land." Id. Indeed, Salisbury has pointed out that Lot 28 has absolutely no utility as an independent *Page 24 
lot — it is unbuildable not only under the Ordinance but also by virtue of its miniscule size. In drawing attention to this fact, Salisbury has established a direct analogy to Sako: like the narrow, tapered strip transferred there, Lot 28 provides no benefit to its owner unless it is appended to a larger parcel of land. See id. Accordingly, no subdivision occurred here.
Defendants' efforts to distinguish the present case fromSako on the ground that the transfer here was more involved than the transfer in Sako are misplaced. Defendants have cast the supposed distinction as follows: "[in Sako], a single lot line was moved or slid over. Here, the original lot line remained and a new lot line was created. . . ." (Def. Sept. 14, 2004 Rep. Memo at 3.) Defendants thereby suggest that Sako only applies where a transfer "slides" a single lot line. However, in Sako, the Rhode Island Supreme Court characterized the transaction differently, as an agreement "to convey a strip of land from lot No. 1648 [which] was adjacent to the subject lots (Nos. 1654 and 1655)." Sako, 688 A.2d at 1297. The Court focused not on the lot lines, but on the "strip of land," which "was a pie-shaped parcel tapering from twenty feet of street frontage to three feet at the back end of the lots." Id. In other words, where certain land is subtracted from one lot and added to an adjacent lot, "this conveyance [does] not create two or more lots, tracts, or parcels of land." Id. Here, the circumstances surrounding the transfer point to no conclusion other than that Lot 28 was subtracted from Lot 26 and added to adjacent Lot 8. Accordingly,Sako is directly on point and no subdivision occurred.[9]See id. *Page 25 
All of Defendants' arguments rest on the assumption that Lot 28 is, in fact, a separate and distinct lot. This assumption appears to be founded on the tax assessor's designation of the disputed parcel as Lot 28. Defendants' most recent memorandum, however, points out the legal ramifications of the tax assessor's designation: "the purposes of the tax assessor in determining what is a `lot' as opposed to the purposes of zoning are markedly different, and one's determination of what is a lot is not binding on the other. . . . Accordingly, this argument . . . is unavailing and irrelevant." (Def. Dec. 3, 2008 Rep. Memo at 4 (citing, e.g., Smith v. Zoning Bd. of Rev., 111 R.I. 359, 368,302 A.2d 776, 781 (1973)).) The Court can find no other evidence that Lot 28 was created as an independent lot; accordingly, Defendants' position that Lot 28 has ever been an independent lot appears to be without any legal basis.
Additionally, assuming that the transfer of Lot 28 constituted an illegal subdivision, Defendants have pointed to no authority for their assertion that Salisbury does not and cannot own the Lot. A review of Rhode Island law reveals that their assertion is incorrect. At the time Lot 28 was transferred, G.L. 1956 (1980 reenactment) § 45-23-13 provided that "[a]ny sale of land subdivided in violation of the provisions of any ordinance enacted pursuant hereto shall be voidable at the option ofthe purchaser thereof. . . ." (Emphasis added.) "[A] voidable contract is valid and binding until it is avoided by the party who is entitled to avoid it."[10] 17A Am Jur 2d: Contracts § 10 at 46. Salisbury certainly never opted to void the transfer of Lot 28; accordingly, he had and has good title.[11] *Page 26 
Instead, at the time of the transfer in 1985, the Town's recourse under § 45-23-12 was to fine the transferor and to seek an order enjoining the transfer of Lot 28.[12] The Town, however, took no such action. Instead, the Town accepted the recordation of the deed by which Salisbury took title to Lot 28, and taxed Salisbury on that same property.[13] As a result, the undisputed facts demonstrate that after its transfer to Salisbury, Lot 28 was at worst a nonconforming lot of record.[14]
Thereafter, in 1991, the Town enacted Ordinance Article VI § 1, which provided that "[w]hen adjacent land is in the same ownership, lots smaller than the minimum dimensions will be required to be merged to form a larger lot that will conform or more closely conform to the dimensional regulations for that particular district before a building permit can be issued." At that time, if Lot 28 was in fact an independent lot, then it merged with Lot 8 because of its small size pursuant to Ordinance Article VI § 1. *Page 27 
Accordingly, Salisbury has argued correctly that if Lot 28 ever did exist independently then it merged with Lot 8 in 1991 at the latest.
Finally, and perhaps most importantly, Defendants have never so much as suggested a legal reason for their conclusion that the owner of a so-called "illegal lot" may not use that lot for access to an adjacent lot. Defendants assume, without pointing to any authority, that the owner by deed of an illegally created lot actually has no ownership interest in that lot, and therefore cannot use that lot for ingress and egress to adjacent property. At no point since the transaction occurred in 1985 has Rhode Island law allowed for such a result. This Court has already addressed the remedies for an illegal subdivision at the time of the transfer: under §§ 45-23-12 and 13, Salisbury could have voided the transfer, the Town could have fined Newbrook, and the Town could have sought a court order enjoining the transfer. However, none of this occurred, and no other remedies then existed at law. Present day Rhode Island law also establishes particular consequences for an illegally created lot, as set forth in § 45-23-59:
 (a) Local regulations adopted pursuant to this chapter shall provide for a penalty for any violation of the local regulations, or for a violation of any terms or conditions of any action imposed by the planning board or of any other agency or officer charged in the regulations with enforcement of any of the provisions.
 (b) Violation of the regulations include any action related to the transfer or sale of land in unapproved subdivisions. Any owner, or agent of the owner, who transfers, sells or negotiates to sell any land by reference to or exhibition of, or by other use, a plat of the subdivision before the plat has been approved by the planning board and recorded in the municipal land evidence records, is in violation of the local regulations and subject to the penalties described in this chapter.
 (c) The penalty for violation shall reasonably relate to the seriousness of the offense, and shall not exceed five hundred dollars ($500) for each violation, and each day of existence of any violation is deemed to be a separate offense. Any fine shall inure to the municipality. *Page 28 
 (d) The municipality may also cause suit to be brought in the supreme or superior court, or any municipal court, including a municipal housing court having jurisdiction in the name of the municipality, to restrain the violation of, or to compel compliance with, the provisions of its local regulations. A municipality may consolidate an action for injunctive relief and/or fines under the local regulations in the superior court of the county in which the subject property is located.
None of the above suggests either that Salisbury's deed is invalid or that Salisbury cannot use Lot 28 for access to Lot 8. Defendants have simply failed to take this extra step of considering the appropriate remedies for what they allege was an illegal subdivision. Accordingly, even if all Defendants' arguments on the merits were exactly correct — which they are not — as a matter of law Salisbury is still entitled to a declaratory judgment that he owns Lot 28 and is entitled to use the same property for access to Lot 8.
 IV Conclusion
Lest this decision breed more confusion, a recap will now follow. From 1992 to 2002, a number of judicial and quasi-judicial bodies issued decisions which have no effect on Salisbury's present declaratory judgment claim. In 2006, the Court denied Defendants' motion for summary judgment, holding that Salisbury's acquisition of Lot 28 was actually only the moving of lot lines, and that Lot 28 was not an independent lot but rather a part of Lot 8. In 2007, the Court denied Salisbury's motion for summary judgment, finding a "quagmire" that was insufficiently clear to dispose of the case on a motion at that time.
Now, the Court first denies Defendants' present motion for summary judgment and holds that the issue of whether Salisbury is entitled to use Lot 28 for access to Lot 8 has never before been squarely addressed by any adjudicative body in any action other than this one. *Page 29 
Second, the Court grants summary judgment for Salisbury and holds that Lot 28 exists only as a part of Lot 8 (now merged with Lots 6, 7, 9, and 11) and not as an independent lot. Salisbury has amply demonstrated that Lot 28 is not an "illegal lot" as Defendants contend. Defendants have raised no convincing argument to the contrary. Accordingly, Salisbury is entitled as a matter of law to a declaratory judgment that he owns Lot 28 and is entitled to use the same for access to Lot 8.
Counsel for Salisbury shall submit an order within ten days.
[1] At present, several of these lots have merged; for the sake of convenience, however, the Court will refer to each by its designation on the tax assessor's plat map. It is particularly worth noting that the Court's reference to Lot 28 as such should not be construed as an acknowledgement that Lot 28 actually exists as an independent lot.
[2] Salisbury relied on Ordinance Article I § 5 ¶ 3, which provided that an applicant cannot be denied a permit based on a lack of frontage if the lack of frontage existed before the enactment of the Ordinance, and Ordinance Article IV § 1, which provided that such a pre-existing substandard lot may be used for a single-family dwelling. SeeDecision at 2.
[3] Salisbury argued that the Board lacked jurisdiction over the lots "because the lots were `grandfathered' prior to the creation of zoning. . . ." (1998 Decision at 3 n. 5.)
[4] The record reveals little about Allaire other than his status as applicant on the 2002 Application. The Court surmises that Allaire was a prospective buyer of the lot that would have been newly created by the proposed two-lot subdivision.
[5] Salisbury took title to Lot 28 in 1985. At that time, if the transfer of Lot 28 was only the moving of lot lines, then Lot 28 became a part of Lot 8. In 1991, the Town passed the merger ordinance. The merger of Lots 6, 7, 8, 9, and 11 was formally recognized by the Board's 1996 decision. Accordingly, the result of the Court's finding that the transfer of Lot 28 resulted in the moving of Lot 8's lot lines is that Lot 28 is not only a part of Lot 8 but also a part of the parcel that formed when Lots 6, 7, 8, 9, and 11 merged.
[6] The Zoning Board had concluded that Lot 28 was an illegal lot which could not support access to Lot 8. See Decision at 4.
[7] Allaire is named as "Applicant" on the 2002 Application, whereas Salisbury is listed on the 2002 Application only as the property owner. Neither Salisbury nor Defendants, however, have addressed whether the Board's decision regarding the 2002 Application is binding on Salisbury. Accordingly, this Court will assume for purposes of this decision that the Board's decision is binding on Salisbury.
[8] It should be noted that part of the reason the merits have never been addressed is the Town's consistent position that Lot 28 is an illegal lot. If the Town had acknowledged the possibility that Lot 28 was actually nothing more than a portion of Lot 8, then the issue of access via Lot 28 would have arisen in a previous proceeding. Indeed, Lot 8 has been central to each of Salisbury's previous actions. However, because the Town viewed Lot 28 as an illegal lot rather than a portion of Lot 8, no decision of the zoning or planning board ever passed on Lot 28.
[9] Moreover, Defendants have pointed to no support for their assertion that the original lot line remained in this transaction. Instead, it appears that a portion of Lot 8's lot line was moved to absorb a piece of Lot 26, just as a portion of the lot lines of Lots 1654 and 1655 was moved to absorb a piece of Lot 1648 in Sako.688 A.2d at 1297. Here, however, the lot line was rotated and extended, rather than "sliding" as in Sako. See id.
[10] A voidable contract is distinct from a void contract, which "is no contract at all; it binds no one and is a mere nullity." 17A Am. Jur.2d: Contracts § 10 at 45.
[11] The Town argues that Salisbury appears to be seeking to quiet title, and that therefore Salisbury has not joined all necessary parties and the Town is not a proper party. Salisbury, however, is not seeking to quiet title. The Town has asserted no ownership interest in Lot 28, but rather seeks to assert that Salisbury does not own the property because his deed is invalid under state and local law. In other words, the Town has challenged the validity of the deed that conveyed Lot 28 to Salisbury; this action therefore properly seeks a declaration that the deed is valid.
[12] Then-section 45-23-12, entitled "Penalty for sale of land in unapproved subdivisions — Injunction," provided in full that:
 Whoever, being the owner, or agent of the owner, of any land within a subdivision in any city or town which adopts an ordinance under this chapter, transfers, sells, or negotiates to sell any land by reference to or exhibition of or by other use of a plat of such subdivision before such plat has been approved by the plan commission and has been recorded shall be subject to a penalty of one hundred dollars ($100) for each lot so transferred, sold or negotiated for sale and the description of such lot by metes and bounds in the instrument of transfer or other document used in the process of transferring or selling shall not except the transaction from such penalties or from the remedies herein provided. Such city or town may enjoin such transfer or sale or agreement by action for injunction brought in the superior court for the county in which such city or town is located or may recover such penalty by an action of the case in any court of competent jurisdiction or may pursue both of such remedies.
[13] Although neither of these actions is strictly relevant to the legal status of Lot 28, it is worth noting that the Town was aware of the transfer of Lot 28 and elected not to enforce its subdivision regulations at the time.
[14] Lot 28 was at worst a nonconforming lot of record; as the above discussion reveals, however, it was actually a portion of Lot 8.